## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

IN RE:

BLUEWORKS CORPORATION,

      Debtor.[1]

Chapter 11

Case No. 24-_____

## DEBTOR'S MOTION FOR ORDER AUTHORIZING (I) MAINTENANCE OF THE DEBTOR'S PREPETITION BANK ACCOUNTS; (II) CONTINUED USE OF EXISTING BUSINESS FORMS; AND (III) PAYMENT OF CERTAIN PREPETITION OBLIGATIONS TO AMAZON

Blueworks Corporation (the "Debtor"), debtor and debtor-in-possession in the above-captioned case, hereby moves (the "Motion") the Court for entry of an order (the "Order"), attached hereto as **Exhibit A**, pursuant to sections 105(a), 345, 362, 363, 541 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"); Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 9013-1 of the Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "Local Rules"): (i) authorizing the Debtor to maintain its existing bank accounts; (ii) authorizing the Debtor to maintain its current business forms and (iii) authorizing payment of prepetition charges and fees due and/or collected by Amazon Merchant Services ("Amazon").

In support of the Motion, the Debtor respectfully states as follows:

---

[1] Debtor is the following entity (the last four digits of its taxpayer identification number follow in parentheses): Blueworks Corporation (3957). The Debtor's address is 8408 Channel Way, Waxhaw, North Carolina 28173.

## JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 345, 362, 363, 541 and 1108 of the Bankruptcy Code; Rule 6004 of the Bankruptcy Rules; and Local Rule 9013-1 of the Local Rules.

3.      In support of this Motion, Debtor relies on the Affidavit of Michael Bowers in Support of First Day Relief (the "Bowers Affidavit").

## BACKGROUND

**A.      Existing Business Forms and Records**

4.      In the ordinary course of business, the Debtor uses a variety of business forms. By virtue of the nature and scope of the Debtor's business operations, it is important that the Debtor be permitted to continue using its business forms without alteration or change. Alteration such as adding a "debtor-in-possession" designation to these forms could impose a significant time and cost burden on the Debtor. The Debtor also maintains certain books and records in connection with the operation of its business. Continuing with such books and records subsequent to the Petition Date rather than closing those and opening new books will enable the Debtor to avoid unnecessary cost and burden.

**B.      Debtor's Prepetition Cash Management**

5.      The Debtor sells swimming pool equipment, including chlorinators, chlorinator cell replacements, saltwater system parts, pool lights, pool alarms, pool timers, and pool pumps, among other products, directly to individual pool owners. The Debtor sells its products through listings

on Amazon, which then pays the Debtor for the sales mid-month and at the end of each month, depositing the revenues into the Debtor's bank account held at Bank of America, N.A., ("BofA") account number ending in 2409 (the "2409 Account"). From January 2023 through June 2023, the Debtor received[2] from Amazon roughly $2.8 million in sales in the 2409 Account, averaging roughly $480,000 in receipts from Amazon each month. The Debtor also utilized another BofA account ending in 9234 (the "9234 Account" and with the 2409 Account, the "BofA Accounts"), which was used to receive shipping cost payments by Zelle from customers who were returning the Debtor's products to be replaced pursuant to the Debtor's warranty and refund terms. The 9234 Account is also used to pay certain operating expenses of the Debtor.

6.      Finally, the Debtor is anticipating a receivable from Amazon in the amount of $5,982.85 to be paid on or about June 12, 2024.

7.      By way of background, in the latter half of 2023, the Debtor significantly slowed its selling due to the high legal cost of defending itself in *Hayward Industries, Inc., v. Blueworks Corporation et al.*, Western District of North Carolina, Case No. 3:20-cv-00710-MOC-DSC (the "District Court Case"). With legal fees capturing increasing amounts of the Debtor's cash flow, the Debtor had limited ability to pay its supplier Ningbo C.F. Electronic Tech Co., Ltd., ("NBCF") to obtain its typical substantial amount of inventory. However, with judgment now rendered in the District Court Case, the Debtor believes it can fund its appellate rights and operate its business as it had historically to generate revenues and profits similar to those generated in the first half of 2023.

8.      On April 11, 2024, Hayward Industries, Inc. ("Hayward"), the plaintiff in the District Court Case, obtained a post-verdict, pre-judgment Temporary Restraining Order (the

---

[2] The Debtor references these figures because its sales slowed as discussed in more detail herein. Sales and revenue data from the second half of 2023 do not provide an accurate reflection of the Debtor's financial history.

"TRO"), a true and accurate copy of which is attached hereto as **Exhibit B**, entered by the District Court for the Western District of North Carolina. The TRO[3] enjoined the Debtor and other codefendants "from facilitating or allowing any withdrawal, transfer, or disposition of assets presently held in any bank accounts owned or controlled by Defendants." TRO, at 7. The District Court found the TRO necessary in part to preserve Hayward's ability to collect on a jury verdict for roughly $4.9 million that it received against the Debtor and NBCF for claims[4] of unfair and deceptive trade practices and false advertising in the Lawsuit. Importantly for the Debtor's prospect of reorganization, the jury found against Hayward for its claims for trademark infringement of nine (9) trademarked terms, finding that the Debtor's use of such terms constituted fair use. In all, the jury found the Debtor liable for two (2) of the twenty-one (21) claims brought by Hayward.

9.      Following entry of the TRO, litigation counsel for the Debtor received notice of the ex parte pleadings, and the Court noticed a hearing on the same for April 23, 2024. The same day the TRO was entered, counsel for the Debtor filed a Motion for Clarification [Doc No. 394] to determine whether the Debtor could pay its ordinary course business expenses. Hayward opposed the Motion for Clarification in a response filed April 12, 2024 [Doc. No. 397]. On April 16, 2024, in a text-only order, the District Court denied the Motion for Clarification, noting the "Court will, however, entertain requests for relief from the TRO on a case-by-case basis."

10.     On April 23, 2024, the District Court held a hearing on the TRO, orally ruling to extend the TRO for another fourteen (14) days or until the Court enters judgment. Importantly for the Debtor's prospect of reorganization, the District Court stated: "There's got to be protection for

---

[3] At Hayward's demand, the TRO also swept up the assets of non-parties to the litigation, including the personal residence of the Debtor's U.S.-based officer and his spouse.
[4] The jury also found that NBCF infringed on Hayward's copyrighted work and entered $750 for the amount of damages related to the claim.

the plaintiff's judgment in this case. There's got to be. **There's also got to be the ability of the defendant to run a business.**" Transcript of April 23, 2024, Motion Hearing, 21:9-11, attached hereto as **Exhibit C** (emphasis added). The District Court formalized its oral ruling in a written order filed April 24, 2024, attached hereto as **Exhibit D** (the "Extension Order").

11.      On May 21, 2024, the District Court entered a text-only order, extending the TRO for another fourteen (14) days. On May 28, 2024, the District Court entered judgment against the defendants in the amount of $16,021,736.30 and held defendants jointly and severally liable "[b]ecause the four Defendants are alter egos[.]" (Doc No. 448) (the "Judgment").

12.      Following entry of the Judgment and based on the text of the TRO the Extension Order, the Debtor reasonably believed that the TRO had been dissolved and initiated transfers to the Debtor's litigation and corporate counsel in the aggregate amount of roughly $430,000.00 along with transfers to an employee, the Internal Revenue Service, and a trade creditor, totaling an additional roughly $9,000.00. The Debtor referenced the transfers in a filing before the District Court, causing counsel for Hayward to challenge the Debtor's position by email to Debtor's litigation counsel on May 31, 2024, and by email to the Court that same day. The Court replied on June 1, 2024, asking Hayward's counsel not to raise substantive issues by email, but nonetheless noting the Court's understanding that the TRO remained in effect. Then, on June 3, 2024, the District Court entered another text-only order, extending the TRO for another two weeks. Given the uncertainty related to the effect of the TRO at the time of the transfers, the Debtor's litigation and corporate counsel have agreed to reverse the application of the funds against their bills and to hold the Debtor's funds in their trust accounts, respectively. On June 7, 2024, Hayward filed its Motion to Show Cause (Doc No. 468), asking the District Court to require the Debtor, its

codefendants, and the Debtor's domestic shareholder and officer "to show cause why they should

not be held in civil contempt for violating the Court's Temporary Restraining Order[.]"

13.    As of June 10, 2024, the BofA Accounts contained roughly $1,835.75. Also as of

the Petition Date, the Debtor anticipates funds totaling $5,982.85 to be transferred on or about June

12, 2024, by Amazon for the current settlement period.

14.    The Debtor would then use the deposits into BofA Accounts to pay its ordinary

course obligations, including funds owed to an employee, vendors, an affiliate that manufactures

the pool products, other suppliers, and its professionals. Upon receipt of payment, NBCF, the

manufacturer, would then manufacture and ship additional pool products through another affiliate,

Ningbo Yishang Import and Export Co, Ltd. ("Ningbo Yishang").

15.    As stated in the Bowers Affidavit and restated here, the Debtor's goal in this

Chapter 11 Case aligns with the District Court's comments—to fairly and efficiently address the

jury verdict and judgment while preserving the Debtor's ability to maintain its business as a going

concern, which will maximize Hayward's recovery while preserving value for the Debtor's

creditors and stakeholders.

**C.    Amazon Sales**

16.    The Debtor sells one hundred percent (100%) of its products on Amazon and has

entered into an Amazon Services Business Solutions Agreement (the "Amazon Agreement"),

which governs the Debtor's relationship with Amazon. The Amazon Agreement provides that

Amazon will remit[5] the Debtor's "Available Balance" every two weeks or more frequently at its

option. The Debtor's Available Balance consists of its Sale Proceeds less fees owed to Amazon

---

[5] Since the Court's entry of the TRO, Amazon continued to remit the Available Balance to the 2409 Account, where
the funds remained frozen absent further order or entry of the Judgment by the District Court. Amazon continued to
collect taxes and fees from the remittances.

for various Amazon services, taxes, and other amounts owed pursuant to the Amazon Agreement. The Amazon Agreement also provides Amazon with the authority to impose a reserve amount of revenues that Amazon will maintain "based on [Amazon's] assessment of the risk that [the Debtor's] behavior or performance poses to Amazon or third parties."

17.    For example, in June 2023, the Debtor's net sales totaled $476,000.00 after deducting (a) withheld taxes; (b) returns totaling roughly $37,900.00; (c) selling fees totaling roughly $76,000.00; and (d) Fulfillment by Amazon fees totaling roughly $10,000.00.

18.    The Debtor expects the next remittance from Amazon to be available on or about June 12, 2024, and to total $5,982.85 with Amazon retaining (a) $1,595.30 due to returns and refunded expenses; (b) $278.49 in costs of advertising; (c) 89.97 in shipping charges; and (d) Fulfillment by Amazon fees totaling roughly $37.93; and (e) $322.38 in Amazon fees.

## RELIEF REQUESTED

19.    Pursuant to this Motion, the Debtor seeks an order (i) authorizing the Debtor to maintain its existing bank accounts; (ii) authorizing the Debtor to maintain its current business forms and (iii) authorizing payment of prepetition charges and fees due and/or collected by Amazon Merchant Services ("Amazon").

## BASIS FOR RELIEF REQUESTED

**I.      The Bankruptcy Code supports the Debtor's ability to maintain its Bank Accounts.**

*A.      Maintaining current the Bank Accounts is relief commonly granted by Bankruptcy Courts.*

20.    The Debtor seeks a waiver of the form Chapter 11 Operating Order, which requires the closure of a debtor's prepetition bank accounts and opening of new post-petition bank accounts. Maintenance of the Bank Accounts will allow the Debtor to focus on its post-petition revenues and business operations while simplifying the issues before this Court at the outset of this Chapter 11

Case. The Debtor intends to work with BofA to ensure no payments are made on account of prepetition obligations absent further order of this Court.

21.    Bankruptcy courts routinely permit chapter 11 debtors to maintain their bank accounts, generally treating requests for such relief as a relatively simple matter. In re Baldwin United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code). Continued use of bank accounts has been granted in other bankruptcy cases in this and other districts. See, e.g., In re Garlock Sealing Techs., LLC, Case No. 10-31607 (JCW) (Bankr. W.D.N.C. June 8, 2010) (the "Garlock Order"); In re Hendricks Furniture Grp., LLC, Case No. 09-50790 (JCW) (Bankr. W.D.N.C. June 12, 2009) (the "Hendricks Order"); In re Portrait Innovations, Inc., Case No. 17-31455 (Bankr. W.D.N.C.) (the "Portrait Order"); In re Alpha Nat. Res., Inc., Case No. 15-33896 (KRH) (Bankr. E.D. Va. Aug. 5, 2015); In re Bi-Lo, LLC, Case No. 09-02140 (Bankr. D.S.C. June 24, 2009).

22.    Finally, the Debtor will coordinate with BofA to ensure no payments are made from the BofA Accounts on account of prepetition obligations and liabilities absent an order from this Court.

     B.    *The automatic stay protects post-petition receipts for use by the Debtor.*

23.    Upon the filing of a bankruptcy case, the Bankruptcy Code stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case[.]" 11 U.S.C. § 362(a)(2). The automatic stay further bars "any act to

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Likewise, a creditor cannot undertake "any act to collect, assess, or recover a claim against the debtor that rose before the commencement of the case[.]" 11 U.S.C. § 362(a)(6). A debtor's estate includes funds held or to be received by the debtor. 11 U.S.C. § 541; Shuford v. Citizens S. Bank (In re Yatko), 416 B.R. 193, 201-02 (Bankr. W.D.N.C. 2008) (holding funds subject to a prepetition asset freeze were property of the debtor's estate); see also In re Dolen, 265 B.R. 471, 474 (Bank. M.D. Fla. 2001) (finding automatic stay protected post-petition income of Chapter 13 debtor from preliminary injunction issued for such income prepetition).

24.     In Dolen, the Federal Trade Commission filed a lawsuit prepetition against the debtor and others related to the sale of "a paralegal work-at-home kit to prepare bankruptcy and divorce petitions for pro se litigants." 265 B.R. at 474. The district court issued a temporary restraining order and then a preliminary injunction that "preliminarily enjoined the continued operation of the paralegal work-at-home kit business and the sale of the kits;" and "preliminarily enjoined all disposition and transfer of the defendants' property, in effect freezing all such property[.]" Id. The bankruptcy court noted that the district court granted the preliminary injunction to preserve "the Court's ability to grant effective final relief in the form of equitable monetary relief for consumers." Id. at 474-75. During the hearing, plaintiff's counsel reiterated the purpose of the preliminary injunction "to secure the District Court's ability to ultimately provide monetary relief to consumers." Id. at 475.

25.     Following entry of the preliminary injunction, the debtor filed her bankruptcy case under Chapter 13 and asked the bankruptcy court to preclude the plaintiff "from enforcing the preliminary injunction to prevent the debtor from spending her post-petition income to pay her

family living expenses and Chapter 13 plan payments." Id. While analyzing the automatic stay

provisions in light of the exception of a federal agency's police and regulatory powers under

Section 362(b)(4), the court analyzed "whether the automatic stay precludes the Commission from

enforcing the preliminary injunction so as to exercise control over the debtor's non-injunction

related post-petition earnings—that are clearly property of the bankruptcy estate—without first

seeking and obtaining modification of the automatic stay." Id. at 481. The court found:

> acts by the Commission in this case to enforce the preliminary
> injunction enjoining the debtor's use of her post-petition income
> would not further the administration of the debtor's bankruptcy case.
> To the contrary, it would make it impossible to administer the case
> and for the debtor to confirm a plan; the case would fail immediately
> at its inception.

Id. at 482-83. The Court then highlighted the requirements of a Chapter 13 debtor to begin making

plan payments, noting enforcement of the preliminary injunction "would dramatically undercut

the ability to reorganize under the auspices of the Bankruptcy Code of any debtor who is involved

in litigation with a governmental unit or organization that has the statutory ability to obtain a

preliminary injunction such as the one at issue here." Id. at 483.

26.     The court noted enforcement of the preliminary injunction to post-petition funds

"would give the Commission an unfair advantage over other creditors, subvert the scheme of

priority set forth in Section 507, and deny to the debtor the benefits of reorganization and

discharge." Id. The Commission reinforced those concerns by "candidly admit[ting] at the hearing

[that] the Commission seeks to enforce the preliminary injunction in this manner '*to secure the

District Court's ability to ultimately provide monetary relief to consumers.*'" Id. at 484 (emphasis

in original). The "Commission's enforcement of the preliminary injunction as against the debtor's

post-petition earnings is therefore equivalent to an action taken to enforce a money judgment." Id.

Therefore, "[a]ctions taken by the Commission to enforce its preliminary injunction as against the

debtor's post-petition non-injunction related earnings are therefore not excepted by Section 362(b)(4) from the automatic stay." Id. at 485.

27.     The bankruptcy court's ruling "serves to advance bankruptcy principles in harmony with the policy issues at play in the district court action." Id. at 486. The "result will not provide a 'haven for wrongdoers' or allow the debtor to attack collaterally the district court's order as feared by the Commission." Id. The Dolan debtor (as are chapter 11 debtors) "is required to act in the manner of a trustee, for the benefit of creditors who are beneficiaries of this trust estate." Id.; see also In re J.T.R. Corp., 958 F.2d 602, 604 (4th Cir. 1992) ("A debtor-in-possession under Chapter 11 holds title and powers of [a] trustee. The debtor-in-possession is a fiduciary and owes the same duties as a trustee. The debtor-in-possession does not act in [its] own interests, but rather in the interests of the creditors.").

28.     The result reached in Dolen should be the same result reached here. To start, the Court need not analyze whether the Debtor's post-petition earnings are related to the TRO because the TRO did not prohibit the Debtor from operating its business as did the district court in Dolen. Id. at 474 (noting injunction "preliminarily enjoined the continued operation of the paralegal work-at-home kit business and the sale of the kits").

29.     Instead, the TRO "ORDERS that Defendants and their agents, employees, and representatives are ENJOINED from facilitating or allowing any withdrawal, transfer, or disposition of assets presently held in any bank accounts owned or controlled by Defendants." TRO, at 7. The TRO then enjoins "any transfer, disposition, or encumbrance of real estate or vehicles" purportedly owned by the defendants but either co-owned or owned outright by the Debtor's minority owner and his spouse. Id.

30.     The Court reached its conclusion in part because:

a.  "Plaintiff contends a TRO is necessary to prevent Defendants from transferring assets—*which would otherwise be used to satisfy the judgment in this matter*—to entities beyond this Court's jurisdiction." <u>Id.</u> at 2 (emphasis added);

b.  "Requiring Plaintiff to provide notice—that is, refusing to act <u>ex</u> <u>parte</u>—could *prevent Plaintiff from collecting on the judgment* in this matter." <u>Id.</u> at 4 (emphasis added).

c.  "The harm Plaintiff identifies—*inability to collect on the judgment in this matter*—would be irreparable." <u>Id.</u> (emphasis added).

d.  "Even if Defendants do not attempt to shield assets from execution, it is probably already fair to say that Plaintiff faces 'the prospect of *collecting money damages* from a foreign defendant with few to no assets in the United States.'" <u>Id.</u> at 5 (emphasis added).

e.  "The public has an interest in the *enforcement of judgments*." <u>Id.</u> at 6 (emphasis added).

f.  "Where freezing a defendant's assets is *necessary to secure enforcement*, an asset freeze is in the public interest." <u>Id.</u> at 6 (emphasis added).

31.    Like <u>Dolen</u>, the purpose of the preliminary injunction is to secure the ability of Hayward to enforce and collect its judgment. And like <u>Dolen</u>, applying the TRO to post-petition earnings and revenues of the Debtor "would dramatically undercut the ability to reorganize under the auspices of the Bankruptcy Code." <u>Dolen</u>, 265 B.R. at 483. In short, "the case would fail immediately at its inception." <u>Id.</u>

32.    Ultimately, the automatic stay provisions of Section 362 apply to the post-petition earnings and revenues of the Debtor as in <u>Dolen</u>. The TRO purports to exercise control over

property of the Debtor's estate; provides for the enforcement of a judgment obtained before the commencement of the case; and constitutes actions to collect or recover a claim against the Debtor, all of which were automatically stayed as of the Petition Date.

33.    Finally, the Debtor views seriously its fiduciary obligations and duties to its creditor body. As more specifically described in the Bowers Affidavit, the Debtor filed this Chapter 11 Case to fairly and efficiently resolve the alleged liabilities owed to Hayward and other creditors while also preserving the going concern value of its business to the benefit of all parties. The Debtor hopes to accomplish its goals and maximize the recoveries available to Hayward and all its creditors. The Debtor's value-maximizing position can only be obtained if the Debtor can continue operating. And the Debtor can only continue operating if it has access to its earnings and revenues.

## II.    This Court routinely grants requests to maintain and use current business forms.

34.    Changing correspondence and business forms would be unnecessary and burdensome to the estate as well as expensive and disruptive to the Debtor's business operations. To minimize expense on its estate, the Debtor also requests authority to continue to use all correspondence and business forms (including, but not limited to, letterhead, purchase orders, invoices, etc.) without reference to its debtor-in-possession status, unless and until new forms are ordered during the pendency of this Chapter 11 Case. Other courts have allowed debtors to use their prepetition forms without the "debtor-in-possession" label. See, e.g., Garlock Order (authorizing debtors to continue to use their existing business forms and checks without alteration or change); Hendricks Order (same); Portrait Order (same).

## III.    Continued payment of Amazon charges

35.    One hundred percent (100%) of the Debtor's revenues are generated from sales through Amazon. The Debtor therefore believes it can only meet its fiduciary duties as debtor-in-

possession under Sections 1107 and 1108 of the Bankruptcy Code by having the authority, but not

the direction, to satisfy any outstanding prepetition obligations on account of fees and other

obligations charged by Amazon related to sales of the Debtor's products.

36.      The Bankruptcy Code contemplates that debtors will continue to operate their

businesses as usual for their customers. Unless the Court orders otherwise, section 1108 of the

Bankruptcy Code authorizes a debtor-in-possession to "operate the debtor's business," and section

363 states that "[i]f the business of the debtor is authorized to be operated under section . . . 1108

. . . and unless the court orders otherwise, the [debtor-in-possession] may enter into transactions .

. . In the ordinary course of business without notice or a hearing[.]" 11 U.S.C. § 363(c)(1).

37.      As set forth above, the Amazon practices were developed in the Debtor's ordinary

course of business. Continuing to receive, process, and honor the Amazon transactions and paying

the obligations associated therewith is within the Debtor's ongoing ordinary course of business.

38.      The Debtor, operating its business as debtor-in-possession under sections 1107(a)

and 1108, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit

of creditors and (if the value justifies) equity owners." In re CoServ, LLC, 273 B.R. 487, 497

(Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to

protect and preserve the estate, including an operating business's going-concern value." Id.

39.      The CoServ court noted that pre-plan satisfaction of prepetition claims would be a

valid exercise of a debtor's fiduciary duty when honoring such claims in full "is the only means to

effect a substantial enhancement of the estate." Id. The court provided a three-pronged test for

determining whether a pre-plan satisfaction of a prepetition claim was a valid exercise of a debtor's

fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.
> Second, unless it deals with the claimant, the debtor risks the

probability of harm, or, alternatively, loss of economic advantage to the estate or to the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

40.     Continuing to receive, process, and honor the Amazon transactions in the ordinary course of business meets the CoServ court's standard. First, the success of the Debtor and this Chapter 11 Case depends upon on the Debtor's ability to fund its operations and future plan payments with funds collected from its sales on the Amazon platform. Second, should the Debtor be unable to utilize the Amazon platform if Amazon refused to continue providing services for which it could not be paid, the Debtor's business would be devastated because Amazon is its only marketplace. Third, and finally, the Debtor has not identified any practical or legal alternative to payment of such obligations. A shift in marketplace for the sale of the Debtor's products could not be accomplished at the outset of this Chapter 11 Case and may be impossible in even the best of circumstances. Therefore, the Debtor can only meet its fiduciary duties as a debtor-in-possession under Sections 1107 and 1108 by maintaining its Amazon processes and transactions.

41.     Furthermore, such processes in the ordinary course may also be authorized under Section 105(a) which grants this Court broad equitable authority to approve the relief requested in this Motion. Pursuant to the section, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

42.     Section 105 can be used to further the policy provisions of chapter 11, including "to permit successful rehabilitation of debtors," NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984), and to "preserve[] going concerns and maximize[] property available to satisfy creditors," Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship, 526 U.S. 434, 453 (1999); In re

NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under 11 U.S.C. § 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."). Thus, section 105(a) empowers a bankruptcy court to authorize payment of prepetition claims when such payments are essential to ensure the survival of the debtor pending its reorganization and to maximize the estate's assets available to satisfy creditors.

43.     The Debtor's ongoing operations depend on its ability to continue receiving payments for its products from Amazon, and the Debtor must rely on the continued loyalty of its customers, who rely on Amazon to purchase the Debtor's products.

44.     Also, the Debtor's relationship is governed by the Amazon Agreement, which the Debtor believes to be an executory contract that it intends to assume pursuant to Section 365, which would necessarily require the cure of any defaults, including the taxes and Amazon fees. Therefore, payment now only affects the timing of the payment to Amazon.

45.     Authorization to receive, process, and honor the Amazon transactions in the ordinary course of business and to pay the Debtor's obligations relating thereto shall not be deemed to constitute post-petition assumption or adoption of any executory contract pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all rights under the Bankruptcy Code with respect thereto. Moreover, authorization to receive, process, and honor the Amazon transactions in the ordinary course of business shall not affect the Debtor's right to contest the amount or validity of the obligations.

## REQUEST FOR WAIVER OF STAY

46.     To the extent that the relief sought in the Motion constitutes a use of property under Section 363(b) of the Bankruptcy Code, Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, Debtor requests that the Court find

that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for Debtor to be able to continue to operate its business and preserve the value of the estate.

47.    Nothing herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, or a waiver of the Debtor's rights to dispute any claim, or an approval of the assumption of any agreement, contract, or lease under Section 365 of the Bankruptcy Code.

## **<u>NOTICE</u>**

48.    Notice of this Motion has been given to the following parties: (i) the Bankruptcy Administrator of the Western District of North Carolina, (ii) Hayward, (iii) the Debtor's twenty (20) largest unsecured creditors, and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached hereto as **<u>Exhibit A</u>**: (i) authorizing the Debtor to maintain its existing bank accounts; (ii) authorizing the Debtor to maintain its current business forms and (iii) authorizing payment of prepetition charges and fees due and/or collected by Amazon; and (v) granting such other and further relief as the Court deems appropriate.

*[Remainder of Page Intentionally Left Blank]*

This the 11th day of June, 2024.

RAYBURN COOPER & DURHAM, P.A.

By:    /s/ Matthew L. Tomsic
        Matthew L. Tomsic
        N.C. State Bar No. 52431
        Natalie E. Kutcher
        N.C. State Bar No. 54888
        Ashley B. Oldfield
        N.C. State Bar No. 56552
        Suite 1200, The Carillon
        227 West Trade Street
        Charlotte, NC  28202
        (704) 334-0891

        *Proposed Counsel to the Debtor*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>BLUEWORKS CORPORATION,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 24-_____ |

**ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING (I)
MAINTENANCE OF THE DEBTOR'S PREPETITION BANK ACCOUNTS;
(II) CONTINUED USE OF EXISTING BUSINESS FORMS; AND
(III) PAYMENT OF CERTAIN PREPETITION OBLIGATIONS TO AMAZON**

Upon review of the motion (the "Motion") of Blueworks Corporation (the "Debtor"),

debtor and debtor-in-possession in the above-captioned case, for entry of an order pursuant to

Sections 105, 345, 353, 364, 1107, and 1108 of title 11of the United States Code (as amended, the

"Bankruptcy Code"), authorizing the (i) maintenance of the Debtor's existing bank accounts and

cash management system; (ii) continued use of existing business forms; and (iii) payment of

prepetition charges and fees associated with the Amazon transactions; and upon the Bowers

Affidavit, and due and sufficient notice of the Motion having been given; and it appearing that no

---

[1] Debtor is the following entity (the last four digits of its taxpayer identification number follow in parentheses):
Blueworks Corporation (3957). The Debtor's address is 8408 Channel Way, Waxhaw, North Carolina 28173.

other or further notice need be provided; and upon the record therein; and it appearing that the

relief requested by the Motion is in the best interest of the Debtor's estate, its creditors, and other

parties-in-interest; and after due deliberation and sufficient cause appearing therefore;

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtor is hereby authorized to maintain existing pre-petition bank accounts,

provided that no payments or withdrawals shall be made from such accounts without further order

of this Court.

3.      The Debtor may, without further order of this Court, agree to and implement

changes to its bank accounts, including opening any new bank accounts, in the ordinary course of

business.

4.      The Debtor is authorized to maintain and use its existing business forms without

reference to its debtor-in-possession status.

5.      The Debtor is authorized, but not directed, to continue the Amazon transactions.

The Debtor is accordingly authorized, but not directed, to satisfy any outstanding prepetition

obligations on account of the Amazon transactions and other related obligations.

6.      The requirements of Rule 6003 of the Bankruptcy Rules are satisfied, and the relief

requested is necessary to avoid immediate and irreparable harm.

7.      Notwithstanding Rule 6004(h) of the Bankruptcy Rules, this Order shall be

effective and enforceable immediately upon the entry hereof.

8.      As described in the Motion, BofA is authorized and directed to refuse to honor

checks, drafts, wires, and automated clearing house transfers issued or drawn on the BofA

Accounts prior to the Petition Date by the holders or makers thereof, as the case may be, unless

explicitly directed by the Debtor to honor such items.

9.      As described in the Motion, the Bank is authorized and directed to continue to service and administer the BofA  Accounts as the accounts of the Debtor as debtor-in-possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks drafts, wires, and automated clearing house transfers issued and drawn on the BofA Accounts after the Petition Date by the holders or makers thereof, as the case may be.

10.     The provisions of the automatic stay under section 362 of the Bankruptcy Code are waived, and BofA is authorized and directed to implement reasonable handling procedures designed to effectuate the terms of this Order and may rely on the representations of the Debtor with respect to whether any check, draft, wire, or automated clearing house transfers drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any order of this Court.

11.     Notwithstanding any other provision of this Order, BofA shall not be deemed liable to the Debtor or its estate or otherwise in violation of this Order if it honors a prepetition check or other item drawn on any BofA Account that is the subject of this Order (a) at the direction of the Debtor, (b) in good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the implementation of such handling procedures.

12.     The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

13.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

14.     Pursuant to Local Rule 9013-1(f), any party shall be entitled to request a hearing or

request that the Court reconsider entry of this Order by filing a motion for reconsideration within

fourteen (14) days of service of this Order.


This Order has been signed electronically.  The judge's          United States Bankruptcy Court
signature and court's seal appear at the top of the Order.

## **Exhibit B**

### **TRO**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**DOCKET NO. 3:20-cv-00710-MOC-SCR**

| | | |
|---|---|---|
| **HAYWARD INDUSTRIES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **TEMPORARY RESTRAINING** |
| | ) | **ORDER** |
| | ) | |
| **NINGBO C.F. ELECTRONIC TECH CO., LTD.** | ) | |
| **NINGBO YISHANG IMPORT AND EXPORT** | ) | |
| **CO., LTD.** | ) | |
| **BLUEWORKS INNOVATION CORPORATION** | ) | |
| **BLUEWORKS CORPORATION** | ) | |
| | ) | |
| Defendants. | ) | |
| ------------------------------------------------------------- | ) | |
| **HAYWARD INDUSTRIES, INC.,** | | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| **NINGBO C.F. ELECTRONIC TECH CO., LTD.** | ) | |
| **NINGBO YISHANG IMPORT AND EXPORT** | ) | |
| **CO., LTD.** | ) | |
| **BLUEWORKS INNOVATION CORPORATION** | ) | |
| **BLUEWORKS CORPORATION** | ) | |
| Counterclaim-Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff Hayward Industries' ("Plaintiff") ex

parte motion for temporary restraining order to freeze assets of Defendants Ningbo C.F.

Electronic Tech Co., LTD.; Ningbo Yishang Import and Export Co., Ltd.; Blueworks Innovation

Corporation; and Blueworks Corporation ("Defendants'"). (Doc. No. 382).

### I.     Background

Plaintiff sued Defendants for trademark and copyright infringement, false advertising

1

under the Lanham Act, and violation of the North Carolina Unfair or Deceptive Trade Practices

Act ("UDTPA"). After a week-long trial, the jury found Defendants liable under the Lanham

Act, copyright laws, and UDTPA, and awarded Plaintiff damages of $4,900,750.00. (Doc. No.

353). Plaintiff now seeks an <u>ex parte</u> temporary restraining order ("TRO") pending litigation of

their motion for an asset restraining order. If the Court grants Plaintiff's request for TRO,

Plaintiff will serve their motion for an asset restraining order (Doc. No. 383, already filed <u>ex</u>

<u>parte</u>) on Defendants.

Plaintiff contends a TRO is necessary to prevent Defendants from transferring assets—

which would otherwise be used to satisfy the judgment in this matter—to entities beyond this

Court's jurisdiction.

## II.   Legal Standard

The Court assesses Plaintiff's application for <u>ex parte</u> TRO under Fed. R. Civ. P.

65(b)(1). According to Rule 65(b)(1),

> The court may issue a temporary restraining order without written or oral notice
> to the adverse party or its attorney only if:
>
> > (A) specific facts in an affidavit or a verified complaint clearly show that
> > immediate and irreparable injury, loss, or damage will result to the movant
> > before the adverse party can be heard in opposition; and
> > (B) the movant's attorney certifies in writing any efforts made to give
> > notice and the reasons why it should not be required.

Deciding whether a potentially immediate and irreparable injury justifies entry of a TRO,

the Court considers the same factors applicable to a request for preliminary injunction. <u>Pettis v.</u>

<u>Law Office of Hutchens, Senter, Kellam & Pettit</u>, No. 3:13-CV-147-FDW, 2014 WL 526105, at

*1 (W.D.N.C. Feb. 7, 2014) (<u>citing</u> <u>Hoechst Diafoil Co. v. Nan Ya Plastics Corp.</u>, 174 F. 3d 411

(4th Cir. 1999)). To justify an <u>ex parte</u> TRO, the applicant must show that (1) they are likely to

succeed on the merits; (2) they will likely suffer irreparable harm absent the TRO; (3) the

2

balance of hardships weighs in their favor; and (4) the TRO is in the public interest. <u>League of
Women Voters of N. Carolina v. N. Carolina</u>, 769 F.3d 224, 236 (4th Cir. 2014), <u>cert. denied</u>,
135 S. Ct. 1735, 191 L. Ed. 2d 702 (2015) (<u>citing</u> <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555
U.S. 7, 20 (2008)).

  <u>Ex parte</u> TROs are an extraordinary remedy and thus granted sparingly. <u>Scotts Co. v.
United Indus. Corp.</u>, 315 F .3d 264, 272 (4th Cir. 2002); <u>see</u> Wright and Miller, 11A Fed. Prac.
& Proc. Civ. § 2951 (3d ed.).

### III. Discussion

  The Court first considers the requirement imposed by Fed. R. Civ. P. 65(b)(1)(B).
According to that rule, an <u>ex parte</u> TRO is appropriate where the movant's attorney "certifies in
writing . . . the reasons why [notice] should not be required." Here, Plaintiff's counsel fears that
"upon service on Defendants of [Plaintiff's] Motion for an Asset Restraining Order, Defendants
will immediately transfer [their] assets so they are unreachable by Plaintiff to satisfy the
forthcoming judgment in this case following a jury verdict in [Plaintiff's] favor." (Doc. No. 382-
1 at 1).

  Plaintiff's concern is well-founded. Absent an <u>ex parte</u> TRO—that is, if the Court
required the parties to litigate Plaintiff's motion for asset restraining order without first
preserving the status quo—Defendants would have an opportunity to move assets beyond this
Court's jurisdiction and thus nullify a restraining order's effect even before its entry. All
Defendants have connections to the People's Republic of China, and two are Chinese
corporations. Upon receiving notice of Plaintiff's motion for asset restraining order, Defendants
could easily convey assets to Chinese citizens like Plaintiff's mother and brother, who have
stakes in the Ningbo Defendants. Such notice would also afford Defendants an opportunity to

3

hide or destroy business records related to the location of assets held or transferred by Defendants. Requiring Plaintiff to provide notice—that is, refusing to act ex parte—could prevent Plaintiff from collecting on the judgment in this matter.

Satisfied that Plaintiff's request for TRO is proper under Fed. R. Civ. P. 65(b)(1)(B), the Court turns to the four-factor test articulated in Winter. 555 U.S. at 20.

### a. Likelihood of Success on the Merits

Plaintiff has already succeeded on the merits, as evidenced by the jury verdict awarding them damages of $4,900,750.00. (Doc. No. 353). Plaintiff is entitled to recover on that verdict. This factor clearly weighs in favor of granting the TRO.

### b. Likelihood of Irreparable Harm Absent TRO

The harm Plaintiff identifies—inability to collect on the judgment in this matter—would be irreparable. See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994); Buffalo Wings Factory, Inc. v. Mohd, No. 1:07-CV-612, 2008 WL 4699803, at *4 (E.D. Va. Oct. 23, 2008). The more important question goes to the likelihood that this harm will occur, i.e., that Defendants will attempt to shield assets from execution. Specifically, the question is whether notice of Plaintiff's motion for asset restraining order would lead Defendants to hide or dissipate assets.

All Defendants have strong connections to the People's Republic of China, and two Defendants are Chinese corporations. Numerous district courts have found that "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm." Bushnell, Inc. v. Brunton Co., 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009); see also Qin v. P'ships & Unincorporated Ass'ns on Schedule "A", No. 6:21-CV-1243ADA, 2022 WL 80274, at *3 (W.D. Tex. Jan. 7, 2022); Donahue v. Wang,

No. 22-CV-583, 2023 WL 4110543 (W.D. Tex. May 19, 2023). True, Blueworks is an American

corporation. But Blueworks is also an alter ego of the Ningbo Defendants, which are Chinese

corporations. And Blueworks' corporate presence in the United States is apparently limited to

two employees and a home office. Even if Defendants do not attempt to shield assets from

execution, it is probably already fair to say that Plaintiff faces "the prospect of collecting money

damages from a foreign defendant with few to no assets in the United States." Bushnell, 673 F.

Supp. 2d at 1263. This prospect would only be increased by giving Defendants the opportunity to

move assets overseas by denying Plaintiff's request for ex parte TRO pending litigation of their

motion for an asset restraining order. The Court thus finds that denying Plaintiff's ex parte TRO

would expose Plaintiffs to a significant likelihood of irreparable harm.

### c.   Balance of Hardships

Given the limited (14-day) duration of an ex parte TRO, see Fed. R. Civ. P. 65(b)(2), and

the irreparable harm caused by those assets' potential flight beyond this Court's jurisdiction, the

Court finds that the balance of hardships favors Plaintiff. Even where an asset freeze is not

subject to the fourteen-day limitation of Rule 65(b)(2), Courts (including this one) have often

found that the balance of hardships favors the party seeking the freeze. See, e.g., Chicago Title

Co., LLC v. Wilson Re Servs., Inc.- Aegon, No. 3:22-CV-566-MOC-DSC, 2022 WL 13979424,

at *1 (W.D.N.C. Oct. 21, 2022); BTL Indus., Inc. v. The Unincorporated Ass'ns Identified in

Schedule A, No. 123CV00673PTGJFA, 2023 WL 9105461, at *1 (E.D. Va. Dec. 20, 2023); SEC

v. SBM Inv. Certificates, Inc., No. 06-0866, 2007 U.S. Dist. LEXIS 12685, 2007 WL 609888

(D. Md. Feb. 23, 2007). In any case, Defendants could avoid the brief business disruption

attributable to an asset freeze by simply posting bond to ensure the collectability of Plaintiff's

judgment.[1]

### d. Public Interest

"The public has an interest in the enforcement of judgments." <u>State Farm Mut. Auto. Ins.</u> <u>v. Am. Rehab & Physical Therapy, Inc.</u>, 376 F. App'x 182, 184 (3d Cir. 2010). The public also has an interest in the enforcement of the UDTPA, Lanham Act, and federal copyright laws. <u>See</u> <u>Taylor v. Volvo North Am. Corp.</u>, 451 S.E.2d 618, 629 (N.C. 1994); <u>Studio 1712, Inc. v. Etna</u> <u>Prods. Co.</u>, 777 F. Supp. 844, 854 (D. Colo. 1991); <u>Christ Center of Divine Philosophy, Inc. v.</u> <u>Elam</u>, No. CIV-16-65, 2017 WL 564110 (W.D. Okla. Feb. 10, 2017) (quoting <u>Broadcast Music,</u> <u>Inc. v. George Moore Enter., Inc.</u>, 184 F. Supp. 3d 166, 171 (W.D. Pa. 2016)). Where freezing a defendant's assets is necessary to secure enforcement, an asset freeze is in the public interest. That is the case here. Thus, the Court finds that the public interest favors granting Plaintiff's request for <u>ex parte</u> TRO.

### IV.  Conclusion

The Court finds that all four <u>Winter</u> factors favor granting Plaintiff's request for an <u>ex</u> <u>parte</u> order temporarily restraining Defendant from transferring assets. Therefore, the Court will grant Plaintiff's motion. The Court's decision with respect to Plaintiff's <u>ex parte</u> TRO is without prejudice to subsequent litigation of Plaintiff's motion for an asset restraining order.

### ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's <u>ex parte</u> motion for temporary restraining order to freeze Defendants' assets (Doc. No. 382) is **GRANTED** and a **TEMPORARY RESTRAINING ORDER** issued.

---

[1] Additionally, Mr. Chen testified under oath that Defendants keep a substantial inventory of supplies required to manufacture their products at a warehouse in China, further limiting the potential business disruption caused by an asset freeze. (Rough Trial Tr., Feb. 27, 2024, 18:19-19:15; 41:14-16)

The Court therefore **ORDERS** that Defendants and their agents, employees, and representatives are **ENJOINED** from facilitating or allowing any withdrawal, transfer, or disposition of assets presently held in any bank accounts owned or controlled by Defendants.

Defendants, their agents, employees, and representatives are **FURTHER ENJOINED** from facilitating or allowing any transfer, disposition, or encumbrance of real estate or vehicles owned by them in the United States, including but not limited to the parcel at 8408 Channel Way, Waxhaw, North Carolina; the 2018 Lexus RX 450H, bearing Vehicle Identification Number JTJDGKCA3J2005175 and North Carolina license FMT-6298; and the 2018 Tesla Model 3, bearing Vehicle Identification Number 5YJ3E1EB4JF122121 and North Carolina license FLT-5294.

Defendants' violation of any term of this Order could result in a finding of contempt.

**IT IS FURTHER ORDERED** that in accordance with Rule 65(b)(2), this Order shall expire at the conclusion of the hearing on the Motion for Temporary Restraining Order, which is converted to a Motion for Asset Restraining Order, and the hearing on the Motion for Asset Restraining Order is CALENDARED for an adversarial hearing on April 23, 2024 at 9:20 a.m. at the United States Courthouse, Courtroom 1, 100 Otis St., Asheville, North Carolina.

This Order is issued on April 11, 2024, at 11:40 a.m.

Signed: April 11, 2024

Max O. Cogburn Jr.
United States District Judge

7

## <u>Exhibit C</u>

**Transcript**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

```
_____  )
HAYWARD INDUSTRIES, INC.,          )
                                   )
                                   )
            Plaintiffs,            )
                                   )
            vs.                    )     CASE NO. 3:20-CV-710-MOC-SCR
                                   )
                                   )
BLUEWORKS CORPORATION, et al,      )
                                   )
            Defendants.            )
_____  )
```

**TUESDAY, APRIL 23, 2024**
**MOTION HEARING**
**HELD IN ASHEVILLE, NORTH CAROLINA**
**BEFORE THE HONORABLE MAX O. COGBURN, JR.**
**UNITED STATES DISTRICT JUDGE**

**MICHELLE A. McGIRR, RMR, CRR, CRC**
**Official Court Reporter**
**United States District Court**
**Western District of North Carolina**
**Asheville, North Carolina**

**APPEARANCES**:


<u>On Behalf of the Plaintiff</u>:


**B. CHAD EWING, Esquire**
**RUSS FERGUSON, Esquire**
**Womble Bond Dickinson (US) LLP**
301 S. College Street, Suite 3500
Charlotte, North Carolina  28202


**ERIK PAUL BELT, Esquire**
        **~ via video ~**
**JAMES H. DONOIN, Esquire**
        **~ via video ~**
**McCarter & English, LLP**
265 Franklin Street
Boston, Massachusetts 02110



<u>On Behalf of the Defendant</u>:

 (BlueWorks Corporation)


**CHRISTINA DAVIDSON TRIMMER, Esquire**
**SAMUEL ALEXANDER LONG, JR., Esquire**
**Shumaker, Loop & Kendrick, LLP**
101 South Tryon Street, Suite 2200
Charlotte, North Carolina  28280


**MICHELLE C. DUNN, Esquire**
**Platinum Intellectual Property, LLC**
3031 Tisch Way, Suite 100 PW
San Jose, California  95128


**ALSO PRESENT**:

Steve Halpern
Richard Chen
Gina Lu

1          THE COURT:  Okay.  Here's what the Court's going to do.

2     Until the judgment is in, in a week, I'm going to leave things as

3     they are with the exception that if there's something that needs to

4     be paid that's -- has to be paid in this week, you need to let me

5     know.

6          After that, the defendant is either going to have to put

7     up a bond or identify the assets which would satisfy this judgment

8     and those -- and then maybe we can release some of the others.

9          There's got to be protection for the plaintiff's judgment

10    in this case.  There's got to be.  There's also got to be the

11    ability of the defendant to run a business.

12         And I don't want everybody coming back all the time with

13    that.  If there's something in the next week, I'll take the time to

14    look at it and make a call, but after that, there's going to have to

15    either be a bond or there's going -- the Court would look at the

16    possibility that there would be assets sufficient to satisfy any

17    judgment in interest -- and that the defense can agree and the

18    plaintiffs recognize it's sufficient -- the Court would then hold

19    these and release the rest.  Not do it forever.  Not everything and

20    forever, but for a week I'm going leave it right where it is.  It's

21    just a week.

22         MS. TRIMMER:  One question, your Honor.  With respect to

23    the house, if the house is frozen, I think what their concern is --

24    and, for example, her bank account being listed on that.  That would

25    then be subject to seizure for the judgment if a bond is not posted.

```
 1                    UNITED STATES DISTRICT COURT

 2                 WESTERN DISTRICT OF NORTH CAROLINA

 3

 4                 CERTIFICATE OF OFFICIAL REPORTER

 5

 6             I, Michelle A. McGirr, RMR, CRR, CRC, Federal

 7    Official Court Reporter, in and for the United States District Court

 8    for the Western District of North Carolina, do hereby certify that

 9    pursuant to Section 753, Title 28, United States Code, that the

10    foregoing is a true and accurate transcript of my stenographically

11    reported proceedings held in the above-entitled matter and that the

12    transcript page format is in conformance with the regulations of the

13    Judicial Conference of the United States.

14

15    Dated this 25th day of April, 2024

16

17                                    /s/  Michelle A. McGirr
                                      MICHELLE A. McGIRR
18                                    RMR, CRR, CRC
                                      U.S. Official Court Reporter
19

20

21

22

23

24

25
```

## Exhibit D

**Extension Order**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**No. 3:20-cv-710 -MOC-DSC**

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., Plaintiff, Counterclaim Defendant v. BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD. Defendants, Counterclaim Plaintiffs. | **ORDER EXTENDING TEMPORARY RESTRAINING ORDER** |

**THIS MATTER** is before the Court on Plaintiff's <u>ex parte</u> motion for temporary restraining order. (Doc. No. 382). The Court granted Plaintiff's motion on April 11, 2024, and by that order scheduled an adversarial hearing pursuant to Federal Rule of Civil Procedure 65(b)(2) for April 23, 2024. (Doc. No. 393).

According to FED. R. CIV. P. 65(b)(2), temporary restraining orders issued without notice (like this one) expire within fourteen days of their entry unless "the court, for good cause, extends [the order] for a like period, or the adverse party consents to a longer extension." For the reasons articulated in the original order and stated at the April 23, 2024, hearing, the Court will extend the restraining order for another fourteen days, or until judgment is entered in this matter.

1

**ORDER**

**IT IS, THEREFORE, ORDERED** that the temporary restraining order entered on April

11, 2024 (Doc. No. 393) is hereby **EXTENDED** for an additional fourteen days.

Signed: April 23, 2024

Max O. Cogburn Jr.
United States District Judge

2