UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No.:   24-30494 |
| BLUEWORKS CORPORATION, | ) |
| | ) Chapter 11 |
| Debtor. | ) |

## OBJECTION TO DISCLOSURE STATEMENT

The U.S. Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") objects (the "Objection") to the Disclosure Statement for Plan of Reorganization of Blueworks Corporation (the "Disclosure Statement")[1] [ECF No. 147] filed by Blueworks Corporation (the "Debtor") on October 4, 2024, and, in support hereof, respectfully states as follows:

### PRELIMINARY STATEMENT

The undersigned believes confirmation of a plan of reorganization is possible in this case, but approval of the Disclosure Statement and confirmation of **this** Plan should not occur because (a) consideration of the Plan is premature until certain post-judgment motions are resolved by order of the U.S. District Court for the Western District of North Carolina ("District Court" or "NCWD"), (b) the Disclosure Statement does not provide adequate information pursuant to 11 U.S.C. § 1125; (c) the Plan as proposed is patently unconfirmable, and (d) the Plan is materially inconsistent with the provisions and intent of the order appointing the limited powers chapter 11 trustee.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Disclosure Statement.

As a result of these issues, the Court should defer consideration of the Disclosure Statement or, in the alternative, deny approval of the Disclosure Statement for the reasons set forth herein.

## RELEVANT PROCEDURAL HISTORY

The Debtor sought chapter 11 bankruptcy protection following multi-year litigation before the District Court that resulted in the entry of the Judgment in favor of Hayward Industries, Inc. ("Hayward"). Hayward's Judgment dwarfs the other claims scheduled in this case.

The Debtor and Hayward agreed to entry of a consent order lifting the automatic stay to allow the District Court to consider pending post-judgment motions relating to the Judgment. Those motions are fully briefed before the District Court, and Judge Cogburn held a status conference on October 23, 2024.

In the early days of this bankruptcy case, Hayward expressed to the Court and the Bankruptcy Administrator its lack of trust and confidence in the Debtor's management, which led the undersigned office to propose and negotiate a consent order among the Bankruptcy Administrator, the Debtor, and Hayward appointing Michael Bowers as Limited Powers Chapter 11 Trustee (the "Trustee"). Since his appointment in late July 2024, the Trustee appeared and testified at four lengthy sessions of the section 341 meeting of creditors (the 341 meeting was finally concluded on Tuesday, October 29, 2024, just prior to the filing of this Objection), made significant document productions in response to requests from Hayward, and

continues his investigation of claims and causes of action belonging to the estate in accordance with his court-approved duties.

On October 30, 2024, Hayward filed an objection to the Disclosure Statement. While the undersigned agrees with Hayward that the Disclosure Statement cannot be approved at this time, this Objection raises different arguments in support of the same result.

## ARGUMENT

### A. The Court Should Defer Consideration of the Disclosure Statement and Plan Until Certain Rulings are Made by the District Court.

The outcome of the Permanent Injunction Pleadings pending before the District Court will determine the scope of the Debtor's go-forward business lines and products. Based on the Debtor's own statements in its opposition filed with the District Court, the Permanent Injunction Pleadings threaten to "effectively put [the Debtor] out of business." *See, e.g.*, NCWD Case No. 20-cv-710, ECF No. 386, at p. 28 of 32. While the Debtor makes these arguments to demonstrate that Hayward's permanent injunction motion is inconsistent with the jury's verdict reflected in the Judgment, the Plan as proposed fails to account for the possibility that this injunctive relief is granted and – based on the Debtor's own description of the impact of the Permanent Injunction Pleadings – the possibility that this injunction effectively ends the Debtor's business.

The undersigned believes a ruling on the Permanent Injunction Pleadings is an essential prerequisite to consideration of the Plan as proposed. At the District Court status hearing held on October 23, 2024, Judge Cogburn expressed his

intention to rule on the Permanent Injunction Pleadings in the near term. The undersigned believes the Plan and Disclosure Statement should be held in abeyance until the District Court ruling occurs. For the avoidance of doubt, the undersigned also supports a corresponding extension of the exclusivity period to permit this ruling to occur.

As set forth in greater detail below, the District Court's ruling on the Permanent Injunction Pleadings could significantly impact the Net Income available to pay creditors pursuant to the Plan, raising issues as to the adequacy of the Debtor's disclosures and feasibility of the Debtor's plan. At the same time, a ruling on the Permanent Injunction Pleadings may also be necessary to determine Hayward's claim, since Hayward states in its objection to the Disclosure Statement [ECF No. 157] that its claim includes "ongoing post-petition patent infringement . . . ," even though the Judgment found that the Debtor did not infringe upon Hayward's trademarks and that the Debtor's use of the marks was fair use. For all of these reasons, consideration of the Disclosure Statement before a determination is made on the Permanent Injunction Pleadings would be premature.

### B. The Disclosure Statement Does Not Provide Adequate Information Pursuant to 11 U.S.C. § 1125.

The Disclosure Statement in its current form should not be approved because it is materially deficient. A plan proponent may only solicit votes to accept or reject a chapter 11 plan after the Court has approved the debtor's written disclosure statement for that plan as containing "adequate information." 11 U.S.C. § 1125(b). Section 1125(a) of the Bankruptcy Code defines "adequate information" as follows:

information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. . . a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125(a)(1).

Courts have placed significant importance on adequate disclosure in connection with proposed chapter 11 plans, stating that, given the reliance creditors and bankruptcy courts place on disclosure statements, "we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code['s] standard of adequate information." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).

Creditors have the right to know how their claims will be treated under the Plan before they cast their votes. *See, e.g., In re Arnold*, 471 B.R. 578, 584-85 (Bankr. C.D. Cal. 2012) (disclosure statement that did not indicate which of various alternative plan options would be operative if plan was confirmed and did not provide information on how court's subsequent rulings would affect viability of these various options could not be approved).

The Plan proposes payments to certain classes based on the Debtor's Net Income. Net income is a troublesome mechanism to calculate plan payments, as it creates perverse incentives to manipulate financials to reduce distributions to creditors. Manipulation of net income is easily implemented and difficult to detect

and could include, for example,[2] price manipulation by the affiliate suppliers of the Debtor's products or changing inventory recognition methodologies to increase costs of goods sold and recognizing expenses in earlier or later reporting periods. As a result, the Plan's use of Net Income to calculate amounts due to creditors contains inherent challenges and fails to provide creditors with sufficient specificity of their expected recoveries pursuant to the Plan.

In addition to these inherent challenges with the use of Net Income to determine plan distribution amounts, the Plan includes alternative estimates of Net Income based on the outcome of the Permanent Injunction Pleadings. As discussed above, the Debtor has stated in its NCWD filings that granting of the relief requested by Hayward in the Permanent Injunction Pleadings could effectively put the Debtor out of business. Ultimately, the pending Permanent Injunction Pleadings leaves open the possibility that the Plan results in no payments because there is no Net Income, but the Disclosure Statement fails to adequately disclose this possibility.

Finally, while the treatment for certain classes contains statements that they will be paid from Net Income, it appears necessary that all classes will be paid from the Debtor's Net Income. The Plan does not describe other sources of cash available for distribution.

While the Plan empowers the Trustee to review and pursue estate causes of action, neither the Plan nor Disclosure Statement describe where the proceeds for these causes of action will be held or how/when they will be distributed and to whom,

---

[2]    The undersigned does not believe that the Debtor or its affiliates have manipulated financial outcomes during this bankruptcy case but offers these examples of the relatively simple mechanisms to manipulate Net Income.

including amounts the Trustee may collect pursuant to the pending settlement motion with Ms. Lu. This oversight must be corrected to ensure that these proceeds are segregated and distributed for the benefit of creditors. Hayward assumes the Plan seeks to essentially "catch and kill" the causes of action, but the undersigned is unconvinced this was the intent of the Plan's language; however, the Debtor should not be permitted to intermingle avoidance action recoveries in its operating account, which could result in the Debtor using litigation proceeds to fund its operations instead of paying creditors.[3]

The Disclosure Statement does not provide sufficient information to assess the "best interests of creditors" test found at section 1129(a)(7). This test requires the Debtor to demonstrate that confirmation of the Plan will provide dissenting creditors with at least as much under the Plan as the creditor would receive in a chapter 7 liquidation. The liquidation analysis attached to the Disclosure Statement fails to express the anticipated recovery by creditors as a percentage distribution, instead calculating "realizable assets net of liabilities," which is not a proper means to calculate the anticipated recoveries in a chapter 7 liquidation. While the undersigned believes that reorganization pursuant to chapter 11 may be the best outcome for creditors, the Disclosure Statement fails to provide sufficient information to assess the best interests of creditor test.

---

[3] While the Debtor may argue that any use of litigation proceeds in its operations would simply increase the Debtor's Net Income available for distribution, the undersigned believes that this imposes undue risk on creditors. Instead, the Plan should provide for these proceeds to be segregated and dedicated to payment of creditors.

For the foregoing reasons, the Debtor should be required to amend its Disclosure Statement to address these and other issues following entry of an order on the Permanent Injunction Pleadings.

**C. The Disclosure Statement Should Not be Approved Because the Proposed Plan is Patently Unconfirmable.**

The undersigned believes many of the issues raised in Hayward's objection to the Disclosure Statement are better considered at a confirmation hearing; however, the undersigned joins in the following arguments made by Hayward regarding the patent unconfirmability of the Plan:

- The Plan is not fair and equitable. Under any classification scenario, the Debtor will be required to meet the cramdown requirements for confirmation absent a settlement with Hayward. The Debtor's proposed solution for addressing the absolute priority rule is insufficient and fails to meet the requirements of *LaSalle* for retention of equity under a "new value" exception to the absolute priority rule. *203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).

- The Plan proposes impermissible third-party releases. The Debtor's plan injunction [section 9.5 of the Plan, ECF No. 146 at p. 20-21 of 26] and exculpation provisions [Article I, sections 44 and 45, ECF No. 146 at p. 7 of 27, and section 9.3, at ECF No. 146 at p. 20 of 27] are overbroad considering the recent Supreme Court ruling in *Purdue*. *Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 2017, 219 L. Ed. 2d 721 (2024). The Bankruptcy

Administrator joins in Hayward's arguments at paragraphs 57 through 62 of its objections to the Disclosure Statement. [ECF No. 157].

The undersigned disagrees with Hayworth's characterization of section 6.2 of the Plan found at paragraph 65 of its objection to the Disclosure Statement, where Hayward states that the Debtor is the only party permitted to object to claims. The Plan's language is not inconsistent with section 502 of the Bankruptcy Code and does not limit Hayward's right to object to proofs of claim.

Additional provisions that should be revised to be consistent with the Code and Bankruptcy Rules include:

- Sections 8.7 and 9.4 of the Plan may not amend the Debtor's ongoing obligation to file chapter 11 reports during the pendency of the case, including during the post-confirmation period. Section 12.21 of the Plan accurately reflects the requirement to pay statutory quarterly fees during the pendency of the case.
- Section 5.2 of the Plan should be deleted as it contains a restatement of section 1126(e) that is potentially inconsistent with the Bankruptcy Code, which speaks for itself.

**D. The Debtor Should Not Propose a Plan That Effectively Limits the Scope of the Trustee's Investigation By Its Terms.**

Several provisions of the Plan can be interpreted to limit the scope of the Trustee's investigation in a manner that is inconsistent with the express terms and the spirit of the consent order appointing the Trustee. By way of example, the Debtor's assumption of the real property lease, car leases, and legal services

engagement agreements at section 4.1 of the Plan arguably creates an obligation to cure those agreements, which gives rise to an administrative expense claim that the Debtor must pay and/or confers on counterparties a defense to preference and/or fraudulent transfer causes of action. Similarly, assumption of the indemnification obligations at section 4.2 of the Plan reaches a conclusion that such obligations exist and further promotes them to an administrative expense claim. The proposed treatments for members of Classes 2 and 3 presupposes the result of the Trustee's investigation and fails to protect against the possibility that such investigation would continue during the post-confirmation period. Each of these provisions presupposes a result and potentially reduces assets available for distribution to creditors.

For the Trustee's role to be meaningful – and to protect against the self-interest that Hayward has highlighted in its objection to the Disclosure Statement and other pleadings in this bankruptcy case – the Plan must be revised to either (i) delay confirmation until the Trustee's investigation is completed or, alternatively, (ii) preserve these issues for the Trustee's investigation. The Bankruptcy Administrator has argued that the Trustee must be afforded adequate time to conduct his investigation. The Plan effectively runs roughshod over the powers assigned to the Trustee and, as a result, should not be confirmed absent significant revisions to protect the causes of action the Trustee has been empowered to investigate and, in his business judgment, potentially pursue.

Wherefore, the undersigned seeks entry of an order deferring consideration of the Disclosure Statement and extending exclusivity for a corresponding period for the

reasons set forth herein or, alternatively, denying approval of the Disclosure Statement, and granting such other and further relief as this Court deems just and proper.

This, the 31st day of October 2024.

/s/ Shelley K. Abel
Shelley K. Abel
United States Bankruptcy Administrator
401 W. Trade Street, Suite 2400
Charlotte, NC 28202-1633
N.C. Bar #34370
Tel: (704) 350-7587 Fax: (704) 350-7577
shelley_abel@ncwba.uscourts.gov