**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISON**

| | |
|---|---|
| IN RE:<br><br>BLUEWORKS CORPORATION,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 24-30494 |

**DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DISCLOSURE STATEMENT FOR
PLAN OF REORGANIZATION OF BLUEWORKS CORPORATION**

Blueworks Corporation ("Debtor"), as debtor and debtor in possession, files this reply (the "Reply") in response to *Hayward Industries, Inc.'s Objection to Disclosure Statement for Plan of Reorganization of Blueworks Corporation* [Docket No. 157] (the "Hayward Objection")[2], to the *Objection to Disclosure Statement* filed by the U.S. Bankruptcy Administrator for the Western District of North Carolina [Docket No. 160] (the "BA Objection"[3] and together with the Hayward Objection, the "Objections") and in further support of the *Disclosure Statement for Plan of Reorganization of Blueworks Corporation* [Docket No. 147] (the "Disclosure Statement"). In support of this Reply, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The question before the Court[4] is whether to approve the Disclosure Statement,

---

[1] Debtor is the following entity (the last four digits of its taxpayer identification number follow in parentheses): Blueworks Corporation (3957). The Debtor's address is 8408 Channel Way, Waxhaw, North Carolina 28173.

[2] Hayward filed the Objection in violation of the Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "Local Rules" or a "Local Rule"), specifically Local Rule 9013-2(a), providing for a page limit of twenty-five (25) pages. Consequently, the Debtor respectfully requests the Court to disregard all arguments and content following the twenty-fifth (25th) page of the Objection in part due to Hayward's prior violations of the Local Rules. See, *Debtor's Objection to Hayward Industries, Inc.'s Emergency Motion for Continuance so that Debtor can be Compelled to Respond to Discovery*, ¶ 2, fn. 2. Out of an abundance of caution should the Court consider the Objection in its entirety, the Debtor has attempted to respond to Hayward's arguments.

[3] The Debtor hopes it may be able to address certain of the objections raised in the BA Objection and intends to work with the Bankruptcy Administrator in the interim before the Disclosure Statement Hearing in an attempt to do so.

[4] While Hayward requests this Court to dismiss or convert the Chapter 11 Case, no pending motion requesting such relief is before this Court. The Debtor reserves all rights, arguments and defenses should Hayward seek such relief.

{00394462 v 1 }

allowing the Debtor to solicit the Plan of Reorganization of Blueworks Corporation [Docket No. 148] (the "Plan") and scheduling the corresponding deadlines and confirmation hearing. At this stage, confirmation is not before the Court despite Hayward Industries, Inc.'s, ("Hayward") strenuous attempts to contort objections to confirmation as a basis to deny approval of the Disclosure Statement. Likewise, many of the matters raised by the BA Objection can be preserved for confirmation. Importantly, Hayward is the only creditor who objected to the Disclosure Statement.

2. The Objections fail to show that the Plan's supposed defects cannot be cured by voting, and the Plan's supposed defects concern matters that are undisputed and fully developed to support the Objection's argument that the Plan is patently unconfirmable. A process to develop such a record is more appropriately pursued following approval of the Disclosure Statement as the Plan is solicited and the parties prepare for a confirmation hearing. The Objections further fail to show that the Disclosure Statement lacks adequate information to allow creditors to make a reasonable decision whether to vote for or against the Plan.

3. Interestingly, though not surprisingly, the creditor with arguably the most information about the Debtor due to its yearslong prepetition litigation with the Debtor and the Non-Debtor Defendants[5] along with the vast information exchange within this Chapter 11 Case is the same creditor objecting to the Disclosure Statement on the basis of inadequate information. In sum, the Debtor respectfully requests this Court overrule the Objection and approve the Disclosure Statement.

---

[5] Unless otherwise defined herein, capitalized terms shall have the definition given to them by the Disclosure Statement or Plan, respectively.

{00394462 v 1 }                                                       2

**REPLY**

I. **The Court can consider the Disclosure Statement at this time because the Disclosure Statement takes into account the pending District Court rulings.**

4. Although the BA Objection requests the Court to defer ruling on the Disclosure Statement until the District Court rules on certain post-judgment pleadings, the Debtor believes the Court can move forward on its ruling of the Disclosure Statement at this time. More specifically, upon review of the various outcomes related to the Permanent Injunction Pleadings, the Debtor found a path forward that would account for a total loss on the Permanent Injunction Pleadings such that the Debtor's business could continue.

5. The Debtor captured that potential reality in its projections, which provide an either/or path once the District Court rules on the Permanent Injunction Pleadings. Consequently, the Debtor believes this Court need not wait for a ruling from the District Court to evaluate the Disclosure Statement.

II. **The Plan is confirmable, making the issues raised by the Objections premature and more appropriately suited for the Plan's confirmation hearing.**

6. Objections to the disclosure statement should be directed at the adequacy of the information in the disclosure statement, not plan treatment. In re Foxwood Hills Prop. Owners Ass'n, 2021 Bankr. LEXIS 1626, at *15 (Bankr. D.S.C. June 1, 2021) ("At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues[.]"); In re Skin Sense, Inc., 2017 Bankr. LEXIS 1763, at *15 (Bankr. E.D.N.C. June 26, 2017) (overruling objection which was directed at plan treatment rather than adequacy of information).

7. However, courts will deny approval if the disclosure is patently unconfirmable. In re Foxwood Hills, 2021 Bankr. LEXIS 1626, at *15-16. A plan is "patently unconfirmable where (1) confirmation 'defects [cannot] be overcome by creditor voting results' and (2) those defects

'concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing.'" In re Foxwood Hills, 2021 Bankr. LEXIS 1626, at *16 (quoting In re Am. Cap. Equip., LLC, 688 F.3d 145, 154-55 (3d Cir. 2012)).

- A. *Hayward ignores caselaw requiring it to show the supposed Plan defects cannot be overcome by creditor voting and that the record related to such defects is undisputed and fully developed.*

8. First and foremost, the Objections' patently unconfirmable arguments do not meet the thresholds described in the caselaw, such as In re Foxwood Hills. Each of the objections can be overcome by Hayward and other creditors voting in favor of the Plan despite Hayward's protests that it will not vote for the Plan as written. A creditor, even as large a creditor as Hayward, cannot unilaterally wield a veto power *at the disclosure statement stage* to stymie the Debtor's efforts to solicit and confirm its Plan. The Objections' asserted patently unconfirmable arguments are all matters to be taken up by the Court at a confirmation hearing, making them premature to be raised here and inappropriate to be wielded to defeat approval of the Disclosure Statement absent some showing of a "fatal flaw.: See, e.g., In re Foxwood Hills, 2021 Bankr. LEXIS 1626, at *15 ("At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues, such as classification of claims, feasibility, whether the plan has been proposed in good faith, or whether a plan is fair and equitable.") (collecting cases).

9. Also, the Objections' arguments do not concern matters upon which all material facts are undisputed or have been fully developed by the disclosure statement hearing. Issues of the Debtor's good faith, for example, have not yet been raised by pleading or otherwise by Hayward or other creditors, and the Debtor posits that the record of this Chapter 11 Case itself

belies[6] Hayward's argument that the Debtor has not proposed the Plan in good faith. Importantly, the caselaw does not require a fully developed factual record at the disclosure statement stage to evaluate a patently unconfirmable objection but instead asks whether the record has been fully developed, properly reserving evidentiary issues for the confirmation stage.

10. The Objections are more properly reserved for a contested confirmation hearing following discovery that the Debtor presumes will be taken should the parties not reach a resolution to their myriad disputes or otherwise narrow such disputes prior to such hearing.

*B. The Plan properly classifies various creditors and their claims.*

11. A debtor may classify similar claims separately provided it has a legitimate business reason for doing so rather than for the purpose of manipulating voting. In re Bryson Props., XVIII, 961 F.2d 496, 502 (4th Cir. 1992). A reorganization plan does not need to place "all substantially similar claims . . . within the same class." Id.; see also In re Capital Ctr., LLC, 2013 Bankr. LEXIS 3431, at *11 (Bankr. E.D.N.C. Aug. 22, 2013) ("The language of § 1122(a) requires only that claims in a class must be substantially similar, not that all substantially similar claims be in the same class.").

12. Instead, the proponent of a reorganization plan has broad, though not unlimited,

---

[6] Throughout this Chapter 11 Case, the Debtor has approached Hayward, the Court and this process with good faith in an effort to seek consensual resolution wherever possible even when met with initial formal or informal objections by Hayward. See, e.g., (i) *Consent Order Relating to Hayward Industries, Inc.'s Motion for Relief from the Automatic Stay* [Docket No. 73]; (ii) *Consent Order Appointing Limited Powers Chapter 11 Trustee* [Docket No. 98]; (iii) *Consent Order Extending Objection Deadline for Hayward Industries, Inc. to Respond to the Employment Applications of Platinum Intellectual Property, PC and Schumaker, Loop and Kendrick, LLP* (Docket No. 101); (iv) *Final Order Granting Debtor's Motion for Order Authorizing (I) Maintenance of the Debtor's Prepetition Bank Accounts; (II) Continued Use of Existing Business Forms, and (III) Payment of Certain Prepetition Obligations to Amazon* [Docket No. 113]; (v) *Final Order Authorizing Debtor to Maintain and Administer Its Existing Customer Practices and to Honor Certain Prepetition Obligations Related Thereto* [Docket No. 114]; *Amended Ex Parte Order Approving Application to Employ Platinum Intellectual Property, PC as Special Corporate Counsel for Debtor and Debtor-in-Possession as of the Petition Date* [Docket No. 115]; *Amended Ex Parte Order Approving Application to Employ Shumaker, Loop & Kendrick, LLP as Special Litigation Counsel for Debtor and Debtor-in-Possession as of the Petition Date* [Docket No. 116]; and *Stipulation with Respect to Debtor's Motion to Enforce the Automatic Stay and Award Sanctions for Violation of the Automatic Stay* [Docket No. 158].

discretion to classify unsecured claims separately based on the facts and circumstances of the case. Bryson Props., 961 F.2d at 502 (quoting In re Holywell Corp., 913 F.2d 873, 880 (11th Cir. 1990)); see also In re Sea Trail Corp., 2012 Bankr. LEXIS 4985, at *19-20 (Bankr. E.D.N.C. Oct. 23, 2012) (quoting Bryson Props., 961 F.2d at 502).

13. Separate classification is allowed if the debtor articulates a legitimate business reason for separate classes. CWCapital Asset Mgmt., LLC v. Burcam Capital II, LLC, 2014 U.S. Dist. LEXIS 87900, at *9-10 (E.D.N.C. June 24, 2014). Nevertheless, a debtor's proffered justification must be able to "withstand scrutiny." Bryson Props., 961 F.2d at 502. Separate classification cannot be "designed to manipulate class voting," *i.e.*, to obtain at least one impaired assenting class. Id. (quoting Holywell Corp., 913 F.2d at 880) (rejecting separate classification which was "clearly for the purpose of manipulating voting"). Proposed plans which treat similar but separated classes the same are "highly suspect." Bryson Props., 961 F.2d at 502; see also In re Deep River Warehouse, Inc., 2005 Bankr. LEXIS 1793, at *19-21 (Bankr. M.D.N.C. Sept. 22, 2005) (holding separate classification of an unsecured deficiency claim and unsecured trade claims improper where the proposed plan treated both classes the same but suggesting that "[i]f the two classes [had] received different treatment under the Plan, for legitimate reasons, then the separate classification might be viewed in a different light").

14. The Debtor has legitimate business reasons for the classifications proposed in the Plan. Furthermore, myriad courts have approved classes of claims based on the same criteria the Debtor proposed.

15. Class 2 consists of professionals (the "Class 2 Professionals") that represented the Debtor in the District Court Case and continue to represent the Debtor in this Chapter 11 Case along with post-judgment proceedings in the District Court Case. As such, the professionals have

a different stake in the future viability of the reorganized debtor along with an interest differentiating them from the Debtor's other creditors. *See*, *e.g.*, In re U.S. Truck Co., 800 F.2d 581 (6th Cir. 1986); In re RTJJ, Inc., 2013 Bankr. LEXIS 481 (Bankr. W.D.N.C. Feb. 6, 2013); In re LightSquared Inc., 513 B.R. 56 (Bankr. S.D.N.Y. 2014); In re Graphic Commc'ns, Inc., 200 B.R. 143 (Bankr. E.D. Mich. 1996); In re Tex. Star Refreshments, LLC, 494 B.R. 684 (Bankr. N.D. Tex. 2013); In re STC, Inc., 2016 Bankr. LEXIS 1110 (Bankr. S.D. Ill. April 7, 2016); In re Heritage Org., L.L.C., 375 B.R. 230 (Bankr. N.D. Tex. 2007); In re Wabash Valley Power Ass'n, Inc., 72 F.3d 1305, 1321 (7th Cir. 1995).

16. Furthermore, the Class 2 Professionals have additional facts and circumstances that differentiate them from the other classes of creditors, namely that they received prepetition payments of their legal fees which they reversed due to a dispute of the payments with Hayward, which asserted the payments were made in violation of a temporary restraining order that the Class 2 Professionals and Debtor believed to be dissolved. While the Debtor reserves all rights related to the secured status of the Class 2 Professionals claims, that unique fact and circumstance justifies their separate classification and treatment under the Plan.

17. Class 3 consists of the Allowed NBCF Claim, which is reduced to $0.00. The Debtor has legitimate reasons for classifying NBCF in its own class because NBCF has a unique stake in the viability of the Debtor's business as its sole supplier of inventory (see cases cited above) and NBCF has different recovery rights as against the Debtor and vice versa due to the alter ego Judgment and joint and several liability of the Judgment. See, e.g., In re Premiere Network Servs., 333 B.R. 130, 134-35 (Bankr. N.D. Tex. 2005); In re RTJJ, Inc., 2013 Bankr. LEXIS 481, at *20-23 (Bankr. W.D.N.C. Feb. 6, 2013). The other creditors do not have these characteristics, justifying NBCF's separate treatment.

18. Class 4 consists of the Allowed Judgment Claim, for which the Debtor has legitimate business reasons to separately classify due to the effect of any pending appeal on the treatment of the Allowed Judgment Claim along with the facts and circumstances of the Allowed Judgment Claim, which is (a) a claim representing an overwhelmingly large proportion of all the Debtor's unsecured debt, see In re RTJJ, Inc., 2013 Bankr. LEXIS 481, at *21-23 (Bankr. W.D.N.C. Feb. 6, 2013); In re EBP, Inc., 172 B.R. 241, 244 (Bankr. N.D. Ohio (1994); (b) a claim being litigated that may be appealed and is otherwise disputed, Steelcase Inc. v. Johnston, 21 F.3d 323 (9th Cir. 1994); In re Nome Commer. Co., 1996 Bankr. LEXIS 2031 (Bankr. Alaska May 29, 1996); and (c) a claim based on a judgment, In re EBP, Inc., 172 B.R. 241 (Bankr. N.D. Ohio 1994); In re Cleary Packaging, LLC, 657 B.R. 780 (Bankr. D. Md. Dec. 15, 2023). In short, several independent business reasons exist for the Debtor to have classified the Allowed Judgment Claim in its own class.

19. Finally, Class 5 consists of the Allowed Unsecured Claims. The Debtor classified these claims together because they do not have unique facts and circumstances such that they should be separately classified in individual classes or otherwise. Plans commonly have a catch-all general unsecured claimant class.

*C. The Plan does not run afoul of the absolute priority rule given its payment structure.*

20. "In order to nonconsensually confirm, or 'cram down,' a plan of reorganization over the objection of a dissenting class, the plan proponent must demonstrate that the plan's treatment of that class is 'fair and equitable.'" In re Eagan, 2013 Bankr. LEXIS 260, at *14 (Bankr. W.D.N.C. Jan. 22, 2013) (citing 11 U.S.C. § 1129(b)(1)). "Section 1129(b)(2) sets forth certain criteria that must be met in order for a plan to be considered fair and equitable. When the dissenting class consists of unsecured claims, section 1129(b)(2)(B) requires that the plan satisfy the two-

{00394462 v 1}    8

prong 'absolute priority rule[.]'" Id. "Under this rule, either (i) the plan must provide for payment in full of the allowed amount of the unsecured claims in the dissenting class, or (ii) the holder of any claim or interest junior to the dissenting class (*i.e.*, equity owners in the debtor) may not receive or retain property on account of such claim or interest." Id.

21. However, "equity may retain an interest in a reorganized debtor over the objection of a class of creditors whose claims are not paid in full, in exchange for a fresh contribution of new capital…The new value exception requires a contribution of value that is (1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization, and (5) reasonably equivalent to the value or interest received." Id. at *14-15 (citations and quotations omitted).

22. As highlighted by Hayward, the Debtor proposes that Mr. Chen will retain his Equity Interest in the Debtor in exchange for waiving the Chen Claim[7] and agreeing to a two-thirds reduction of his annual salary[8] until all payments have been made pursuant to the Plan. In other words, Chen seeks to retain his Equity Interest in exchange for (a) the release of his prepetition unsecured claims and (b) his future labor at a reduced rate. Hayward correctly notes the aggregate value of Chen's concessions total $512,500.00.

23. First, Chen's "sweat equity" can be counted as new value because of the unique features of the Debtor's Plan and the dollar-for-dollar impact to Plan payments to be received by Hayward. By Chen waiving his prepetition claim, he removes $212,000.00 from the pool of claims to be paid pursuant to the Plan, which boosts Hayward's and the other creditors' share of Net

---

[7] The Chen Claim consists of a Priority Unsecured Amount of $15,150.00 and a General Unsecured Amount of $197,350.00 for a total of $212,500.00. The Plan proposes to pay the Priority Unsecured Amount in full on the later of the Effective Date or as soon as practicable after the claim is allowed by the Court. The Plan proposes to pay the General Unsecured Amount by paying the pro rata share of the Reorganized Debtor's net income in *pari passu* with Class 4 in three annual installments.

[8] The two-thirds salary reduction equates to a reduction of $100,000 each year for three years.

Income. Furthermore, Hayward notes that its claim constitutes at least ninety-three percent (93%) of the claims pool, meaning that Hayward may receive an additional $93,000.00 in each Plan payment due to Chen's voluntary salary reduction. In aggregate over three years, Hayward will realize an additional $279,000.00 pursuant to the Net Income payments proposed by the Plan thanks to Chen's voluntary salary reduction. These facts meet the policy underlying the new value exception to "help pay creditors or otherwise aid the reorganization." Cleary Packaging, 657 B.R. at 802.

24.     Turning to Chen's offset of his prepetition claim, Hayward focuses on the lack of a market test, noting the Debtor bears the burden of showing the value of Chen's equity and new value, which supports the Debtor's argument that this objection is properly considered at confirmation, not at the disclosure statement stage.

25.     In any event, a court can consider the type of new value necessary and available to be paid. See, e.g., In re RTJJ, Inc., 2013 Bankr. LEXIS 481, *32 (Bankr. W.D.N.C. Feb. 6, 2013) (analyzing new value contribution of $20,000 related to objection by secured creditor with $982,487 unsecured claim and related to value of debtor's assets totaling $1.5 million). Courts can also analyze the size and significance of the proposed new value taking into consideration the facts pertinent to the individual business and equity owners. Id. at *33-34. Finally, related to market testing, the court can consider the timing of the confirmation hearing vis a vis the plan exclusivity period[9] and whether any parties have asserted that a debtor's shares retain value equal to or in excess of the proposed new value. Id. at *36 (noting creditor's "objection is formulaic and obviously intended to block confirmation").

26.     Any issues related to new value and the absolute priority rule are more

---

[9] Some court have considered a competing plan—or lack thereof—as satisfying the market test. In re RTJJ, Inc., 2013 Bankr. LEXIS 481, at *36

appropriately considered in the context of confirmation and caselaw confirms that Chen's proposed new value does not make the Plan patently unconfirmable.

D. *The Plan does not include non-consensual third-party releases but rather preserves the Debtor's estate's causes of action, including its alter ego causes of action, pursuant to noncontroversial Fourth Circuit law.*

27. Hayward's objection to the Plan Injunction misses the mark as it attempts to contort the plain language of the Plan into a non-consensual, non-debtor release. The Plan itself and Fourth Circuit caselaw belies such a conclusion.

28. Related to the Plan Injunction arguments, Hayward attempts to reconcile irreconcilable arguments. First, that "[u]nder the applicable 'identity theory' of alter ego liability, a finding of alter ego automatically expands the debtor's estate to include the property of its alter egos." Objection, ¶ 70(b). In other words, that the alter ego finding means that the property of the Non-Debtor Defendants is property of the Debtor's bankruptcy estate. Second, conversely, that Hayward can disregard the automatic stay and simultaneously collect against the Non-Debtor Defendants' alter egos in the District Court and courts throughout the United States. *Emergency Motion for Continuance so that Debtor can be Compelled to Respond to Discovery*, ¶¶ 2, 4 [Docket No. 119].

29. Fourth Circuit law is clear that alter ego claims are property of the Debtor's estate, allowing for the re-vestment of those claims pursuant to the Plan Injunction. The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As such, the estate includes all alter ego and fraudulent transfer claims belonging to the Debtor. See Aldrich Pump LLC v. Those Parties to Actions Listed on App. A to Compl. (In re Aldrich Pump LLC), 2021 Bankr. LEXIS 2294, at *86 (Bankr. W.D.N.C. Aug. 23, 2021) (holding that alter ego and fraudulent transfer actions are part of the bankruptcy estate

under Section 541(a)(1)); see also Alvarez v. Ward, 2011 U.S. Dist. LEXIS 151873, at *10 (W.D.N.C. Oct. 17, 2011); Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 136 (4th Cir. 1988); In re Midstate Mills, Inc., 2015 Bankr. LEXIS 3105, at *21 (Bankr. W.D.N.C. Sept. 15, 2015).

30. The Judgment explicitly bases its decision to apply joint and several liability to the Debtor and Non-Debtor Defendants on the premise that the parties are "alter egos": "Because the four Defendants are alter egos, Defendants are jointly and severally liable for this amount." Judgment, p. 3. Furthermore, the Verdict Form and Judgment do not apportion individual, direct liability to any of the Non-Debtor Defendants absent the $750 in damages pursuant to a copyright claim against NBCF. Therefore, the multi-million-dollar Judgment against the Non-Debtor Defendants is appropriately considered property of the bankruptcy estate to be pursued by the Debtor for the benefit of its bankruptcy estate and larger creditor body.

31. Finally, although Hayward makes much of a supposed release[10] granted by the Debtor to the Non-Debtor Defendants, the Plan itself does not include such a release. Instead, the Debtor seeks to offset NBCF's claim in a partial recovery of the alter ego judgment, thereby eliminating the second largest claim in the creditor pool and boosting all creditors'—including Hayward's— pro rata share of the Debtor's Net Income. Rather than an alleged end-run attempt to effectuate a non-consensual, third-party release, the Debtor instead is using the tools provided by the Bankruptcy Code and the Plan to recover wherever it can for the benefit of its bankruptcy estate and creditor body.

---

[10] To be clear, the Debtor reserves and preserves all rights, arguments, causes of action and defenses against the Non-Debtor Defendants, including but not limited to the historical payment of attorneys' fees by the Debtor prepetition and the alter ego ruling in the Judgment.

**III.  The Plan contains adequate information, especially considering Hayward's wealth of knowledge as plainly shown in the Objection.**

32. The disclosure statement must contain "adequate information," which is defined as

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]

11 U.S.C. § 1125(a)(1). "The standard for determining whether a plan proponent . . . has provided the adequate information to creditors and parties in interest required under § 1125 is whether hypothetical reasonable investors receive such information as will enable them to evaluate for themselves what impact the information might have on their claims and the outcome of the case, and to decide for themselves what course of action to take." In re Foxwood Hills, 2021 Bankr. LEXIS 1626, at *14 (citations and internal quotations omitted); see also In re Skin Sense, 2017 Bankr. LEXIS 1763, at *10 (approving disclosure statement where it, combined with the plan, "provided creditors with more than adequate information on the full financial history of [the debtor] to vote for or against the plan").

33. "It espouses a flexible standard that takes into account the complexity, facts and circumstances of a particular case." In re Skin Sense, 2017 Bankr. LEXIS 1763, at *10; see also In re RADCO Props., 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) ("In determining the adequacy of information under Section 1125(a)(1), the bankruptcy court reviews the information on a case

by case basis.") (citing In re A.H. Robins, Co., 880 F.2d 694 (4th Cir. 1989)). Simply put, "[a] disclosure statement should provide the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." Id., at 683 (cleaned up).

34.   Accordingly, the information necessary to meet the "adequate information" standard varies greatly depending on the circumstances. See, e.g. In re Phoenix Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("Nonetheless, it is also well understood that certain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

35.   Finally, evaluating an objection to adequate information, the Court can consider "the access by impaired creditors to relevant information from other sources." Id. Courts can also consider the individual circumstances of each objecting creditor. See, e.g., In re Skin Sense, Inc., 2017 Bankr. LEXIS 1763, at *12-13 (noting that objecting creditor was controlled by the estranged husband of the debtor's owner who was very knowledgeable about the debtor's financial and operating history and who was unlikely to vote for any plan that left control of the debtor in the hands of his wife no matter how much detailed information the debtor might provide); In re Bumgardner, 2013 Bankr. LEXIS 747 (Bankr. E.D.N.C. Feb. 28, 2013) (approving disclosure statement over bank's objection because (a) at the hearing, the debtor addressed the issues raised; and (b) the bank was "a sophisticated entity capable of making informed decisions about the debtor's assets").

36.   Here, Hayward[11] presents myriad objections to the information disclosed and

---

[11] The BA Objection included targeted, specific objections to the information included or not in the Disclosure Statement to which the Debtor reserves the right to respond at the Disclosure Statement to the extent the Debtor and the Bankruptcy Administrator cannot resolve the objections.

{00394462 v 1 }                              14

supposedly not disclosed as a basis to object to approval of the Disclosure Statement. However, the Debtor has provided the relevant adequate information to allow creditors to determine what they are going to get, when they are going to get it, and what contingencies there are to getting it. The Disclosure Statement provides projections to guide creditors' analysis of their potential recoveries, taking into account uncertainty related to pleadings awaiting ruling in the District Court. The Disclosure Statement outlines the timing of Plan payments, and if contingencies exist, describes those contingencies. Combined with the Plan, the Disclosure Statement checks each box of required information for a case of this size and limited complexity. But for Hayward's litigious approach, this Chapter 11 Case is a simple, straightforward case of a closely held corporation with limited creditors and efficient operations, much more akin to the subchapter V proceedings taking up a larger and larger share of filings before this Court.

37. Also, the Court can consider Hayward's access to relevant information while weighing its objection to adequate information. Hayward has litigated against the Debtor and Non-Debtor Defendants since 2020, proceeding through discovery, dispositive motions, and a jury trial. Due to the District Court Case, Hayward has an abundance of information available to it about the Debtor, its operations, causes of action, and nearly every category of information for which it now accuses the Debtor of failing to disclose. In this Chapter 11 Case, Hayward has sent the Debtor voluminous informal and formal discovery related to a contested matter and the 341 creditors' meetings, which remained open for four sessions, totaling hours of testimony, and only concluded on October 29, 2024. Despite the closure of the meetings, the Debtor has committed to continuing to provide[12] Hayward information, informally if possible, as Hayward continues to request such

---

[12] Out of an abundance of caution, the Debtor reserves all rights, defenses and objections to such informational requests to extent allowed by the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Bankruptcy Code, and relevant case law.

information.

38. For example, Hayward argues the "Disclosure Statement fails to adequately describe potential Debtor claims and causes of action, including Chapter 5 causes of action, that may be preserved under the Plan." Objection, ¶ 70(e). Then, six paragraphs later, Hayward specifically recites the claims and causes of action it believes the Debtor to have against certain third parties, specifically citing "the record in this case and the District Court Action." Objection, ¶ 70(k).

39. Ultimately, Hayward's allegations of inadequate information are unpersuasive when weighed against the specific knowledge and access to information that Hayward has from "the record in this case and the District Court Action." As such, the Court should overrule Hayward's objection that the Disclosure Statement lacks adequate information.

**IV.    Hayward cannot cite its own no-vote to unilaterally veto approval of the Disclosure Statement, and the Court can consider Hayward's conduct in its determination of the weight given to such allegations and litigation posturing.**

40. In addressing voting, relevant here because of Hayward's assertions that it will not vote in favor the Plan, courts have considered the good or bad faith with which a creditor casts its vote for or against a plan of reorganization. A creditor may not cast a vote in good faith "with a purpose of coercing payment to him of more than he might reasonably perceive as his fair share of the debtor's estate[.]" In re Fed. Support Co., 859 F.2d 17, 19 (4th Cir. 1988) (collecting cases). Nor does a creditor cast a vote in good faith if done so "for an ulterior purpose," including "the purpose to destroy an enterprise in order to advance the interests of a competing business." Id. Should a creditor cast its vote in bad faith, the remedy is for the Court to disqualify and not count the creditor's vote or otherwise designate it. Id. (collecting cases); see, generally, In re Lichtin/Wade, LLC, 2012 Bankr. LEXIS 5785 (Bankr. E.D.N.C. Dec. 17, 2012); In re Cleary

Packaging, LLC, 657 B.R. 780, 804 (Bankr. D. Md. 2023).

41. While any analysis of Hayward's good faith or bad faith is more appropriate for the confirmation hearing, the Court can consider Hayward's conduct[13] throughout this case due to its repeated assertions that it will vote against the Plan. Hayward is a competitor of the Debtor and engaged in years of litigation against Debtor prepetition. Having failed to render a fatal blow to the Debtor's operations via to the Jury Verdict and Judgment due to the fair use findings of Hayward's trademarks, Hayward now seeks to use this Chapter 11 Case and its claim—consisting mostly of treble damages awarded by statute—to give it veto power over the Disclosure Statement and Plan and to accomplish its plainly stated goal of dismissing the Chapter 11 Case (likely leading to the collapse of the Debtor's business under the crushing weight of the Judgment) or converting the case to chapter 7 (certainly causing the collapse of the Debtor's business).

42. While such results may benefit Hayward's bottom line through the elimination of a competitor, they will not maximize the value of the bankruptcy estate or provide for the fair and efficient treatment of the Debtor's creditors not named Hayward, who collectively hold claims totaling more than $1 million, not including NBCF's trade payable.

43. Hayward's threatened vote against the Plan is not a sufficient basis for the Court to find that the Debtor's Disclosure Statement should not be approved and the Plan solicited.

## CONCLUSION

44. For the reasons argued herein, the Debtor respectfully requests that the Court overrule the Objections and approve the Disclosure Statement.

---

[13] In fact, Hayward summarized its approach to this Chapter 11 Case during a status hearing: "[T]he reality of it is there's going to be extensive litigation on these claims in, in this court or somewhere[.]" Transcript of Proceedings, September 25, 2024, 6:11-13. While Hayward made this comment in the context of a removed adversary proceeding, the Debtor believes the "extensive litigation" approach permeates this Chapter 11 Case along with the District Court Case and post-judgment collections activity. The Objection further supports Hayward's "extensive litigation" approach.

| | |
|---|---|
| Dated: November 1, 2024<br>Charlotte, North Carolina | RAYBURN COOPER & DURHAM, P.A.<br><br>By: /s/ Matthew L. Tomsic<br>    Matthew L. Tomsic<br>    N.C. State Bar No. 52431<br>    Natalie E. Kutcher<br>    N.C. State Bar No. 54888<br>    Ashley B. Oldfield<br>    N.C. State Bar No. 56552<br>    Suite 1200, The Carillon<br>    227 West Trade Street<br>    Charlotte, NC 28202<br>    (704) 334-0891<br><br>*Counsel to the Debtor and Debtor in Possession* |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this day the **DEBTOR'S OMNIBUS REPLY IN SUPPORT OF DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION OF BLUEWORKS CORPORATION** was served on those parties registered with the United States Bankruptcy Court, Western District of North Carolina CM/ECF filing system.

This the 1st day of November, 2024.

                                           RAYBURN COOPER & DURHAM, P.A.

                                           By:     /s/ Matthew L. Tomsic
                                                          Matthew L. Tomsic
                                                          N.C. State Bar No. 52431
                                                          Suite 1200, The Carillon
                                                          227 West Trade Street
                                                          Charlotte, NC  28202
                                                          (704) 334-0891

                                                          *Counsel to the Debtor*