# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>BLUEWORKS CORPORATION,<br><br>Debtor[1] | Chapter 11<br><br>Case No. 24-30494 (LTB) |

## HAYWARD INDUSTRIES, INC.'S RESPONSE IN OPPOSITION TO DEBTOR'S INTERIM MOTION TO ENFORCE AUTOMATIC STAY

The Court should deny the Debtor's Interim Motion to Enforce the Automatic Stay (the "Motion"). At least four (4) different provisions of the District Court's Contempt Order of March 19, 2025 (Doc. No. 588 in Case No. 3:20-cv-710-MOC-SCR) ("Contempt Order") bar the Debtor Blueworks Corporation from selling products in the United States on independent and/or alternative grounds:

- Paragraph 1 (Contempt Order at 16) bars Richard Chen (one of the defined "Ningbo Parties") and any of his agents, employees, affiliates, or "anyone acting for or through [him]" from importing or selling any products in the United States, which necessarily encompasses Debtor. Indeed, Judge Cogburn provided an "Appendix A" (Doc. No. 589 at pp. 9-17) of exemplary product listings on Amazon.com that are included within the import/sales ban, along with their Amazon Standard Identification Numbers (ASINs); these products are sold under various brand names, including the Debtor's Blueworks brand name. Judge Cogburn would not have included the Blueworks branded products on Appendix X if he did not intend for Blueworks to be banned from selling products in the United States.)[2];

- Paragraph 1 also bars Richard Chen from selling any products in the United States, while Footnote 4 finds that *Richard Chen's alter ego is the Debtor*[3];

---

[1] Debtor is the following entity (the last four digits of its taxpayer identification number follow in parentheses): Blueworks Corporation (3957). The Debtor's address is 8408 Channel Way, Waxhaw, North Carolina, 28173.

[2] Of note, the listed products are all products manufactured by Ningbo C.F.

[3] Footnote 4 on p. 11 of the Contempt Order provides that "this Court finds that all four Defendants are alter egos of Mr. Chen."

- Paragraph 1 further bars Chen and Ningbo CF from using any agents, affiliates, assignees, or third parties—such as Debtor—to evade this import and sales ban. Indeed, Blueworks (as well as ChlorWorks and Lemonpool) is Debtor's *house brand*, and is listed on Appendix A;

- "For the avoidance of doubt," Paragraph 2 of the Contempt Order bars Chen and the other Ningbo Parties from "inducing, facilitating, contributing to, or otherwise causing, another natural or juristic person(s) (entity)"—such as Debtor—"from importing or selling any of the aforementioned products in or into the United States";

The *coup-de-gras*, however, is Judge Cogburn's acknowledgment that this import and sales ban, and particularly its application to agents, affiliates, etc., of Chen and the Ningbo Parties, could impact Debtor but that such impact is permissible despite the automatic stay:

> 4. To the extent that this sales and import ban impacts Blueworks Corporation, which is currently in Chapter 11 bankruptcy, the ban does not violate the automatic stay of 11 U.S.C. § 362(a) because the ban is issued pursuant to this Court's policy power to enforce its orders, including the TRO. See 11 U.S.C. § 362(b)(4).

Contempt Order at 17, ¶ 4. Given this provision, this Court's granting of the Motion would, in effect, overrule the District Court, which, as argued below, and respectfully, this Court has no authority to do. *See* 11 U.S.C. § 158 (district courts have jurisdiction to hear appeals from bankruptcy courts, not the other way around).

Tellingly, the Debtor never addresses this provision of the Contempt Order. Debtor's failure to confront this provision is unsurprising because the Contempt Order, by its explicit terms, refutes the Debtor's Motion in its entirety. Debtor's ignoring this explicit exception to the automatic stay is particularly surprising because in an email sent *four days before* Debtor filed its motion, Hayward's counsel informed Debtor's counsel about the Contempt order and quoted the above provision that justifies the collateral impact on Blueworks. *See* Motion Exhibit A, March 31, 2025, Email from Chad Ewing to Matt Tomsic.

2

The District Court had jurisdiction over the Debtor and the Debtor had due process before the entry of the Order. It is undisputable that the District Court had jurisdiction over the Debtor. It was properly served with the Summons and Complaint in the District Court case, and it did not contest subject matter jurisdiction, personal jurisdiction, or venue. Furthermore, as a represented party in the case whose counsel appeared and participated in electronic filing, pursuant to FED. R. CIV. P. 5(b)(2)(E), the Debtor was served with all motions, orders, and notices filed in the District Court case by the District Court's ECF system, including (i) Hayward's June 7, 2024, Motion for Order to Show Cause (Doc. No. 468), (ii) the District Court's January 27, 2025, Order granting the Hayward's Motion to Show Cause and Hayward's Motion to Expedite (Doc. No. 568), and (iii) the District Court's January 28, 2024, Notice of Hearing for the Show Cause/Contempt hearing.

And, despite the Debtor claiming that it "was not before the District Court in the contempt proceedings (Motion, ¶ 21), **the Debtor's counsel who signed its Motion, Matthew Tomsic, personally attended the show cause and contempt hearing and the Debtor's Special Corporate Counsel represented the Ningbo Parties at the hearing**. Instead of speaking up on the Debtor's behalf, Debtor's counsel made a strategic decision to sit in the gallery and watch the hearing, knowing that the Debtor could—as it is now doing—attempt to get this Court to reverse the District Court. Notably, counsel stuck with this decision even after Judge Cogburn told everyone at the hearing that his anticipated contempt order could negatively affect the Debtor:

> THE COURT: Yeah. We're not going to play games. Blueworks is going to have a hard time in this court if they don't come in here and defend -- if they left the company -- my understanding is it looked like it was momma and son and relatives and all that kind of stuff. And we will not be gamed by this. We will not be gamed. It's an outrage as to what is going on.

3

March 3, 2025, Hr'g Tran., District Court at 5:5-11.[4]  Now, the Debtor claims that "one could imagine" the arguments that its counsel would make.  Motion, ¶ 20.  The Court is not John Lennon; it is not it's job to "imagine."  The time for Debtor to have made its arguments – or at least raised its objection – was when its counsel sat in Judge Cogburn's gallery.

In addition to keeping quiet in the hearing, Debtor's counsel also had an opportunity to provide post-hearing comments to Judge Cogburn, but he kept quiet then too.  Specifically, after the show cause/contempt hearing, Debtor's counsel received a copy of Hayward's proposed order and told Hayward's counsel, "I'm reviewing the specific bankruptcy language and may have additional edits to that specific paragraph."  March 7, 2025, Email from Matt Tomsic to Erik Belt (attached hereto as Exhibit C).  Although Hayward's counsel objected to Shumaker Loop sending comments to the District Court regarding the order because (i) no Shumaker Look lawyer attended the hearing and (ii) the Debtor was not the subject of the Contempt Order, Hayward's counsel reaffirmed that he was waiting for the promised comments regarding bankruptcy language from Debtor's counsel.  March 7, 2025, Email from Erik Belt to Christy Trimmer (attached hereto as Exhibit D).  **Although Debtor's counsel forwarded comments to Hayward and told Hayward's counsel that those comments would be incorporated into comments to be forwarded to the Court by Ningbo CF's counsel Michelle Dunn, who is also special corporate counsel to the Debtor,** March 8, 2025, Email from Matt Tomsic to Erik Belt (attached hereto as Exhibit C), **that counsel for Ningbo CF Michelle Dunn did not include any of the promised bankruptcy-related comments in her email to the District Court.**  March 11, 2022, Email from Michelle Dunn to Emily Lewis (attached hereto as Exhibit E).  <u>**The Debtor had its chance to circulate its comments to the District Court on the form of the Contempt Order; it simply**</u>

---

[4] Cited portions of the transcript from the show cause/contempt hearing are attached hereto as Exhibit B.

**chose not to do so.** It cannot use its counsel's strategic silence to claim that it did not receive due process.

Finally, the Debtor claims that Hayward somehow violated the automatic stay of 11 U.S.C. § 362(a) in connection with the Contempt Order. Not so. First, as seen above, Judge Cogburn already explained that to the extent that the import and sales ban impacts the Debtor, the ban does not violate the automatic stay because the Court issued the ban pursuant to its police power to enforce its orders pursuant to 11 U.S.C. § 362(b)(4)'s exception to the automatic stay. The District Court's entry of the Contempt Order was a valid exercise of its police power to enforce its prior orders. *See, e.g.*, *In re Kupperstein*, 994 F.3d 673, 679-81 (1st Cir. 2021) (state court contempt proceedings against Debtor for violating court orders within the scope of § 362(b)(4)); *In re Leonard*, 644 Fed.Appx. 612, 615-16 (6th Cir. 2016) (district court sanctions order within the scope of § 362(b)(4)); *U.S. v. Coulton*, 594 Fed.Appx. 563, 566 (11th Cir. 2014) (district court sanctions order within the scope of § 362(b)(4); *Sabre Group, Inc. v. European American Travel, Inc.*, 1999 WL 683863 *2 (5th Cir. 1999) (district court sanctions order for failure to comply with prior court order within the scope of § 362(b)(4); *Alpern v. Lieb*, 11 F.3d 689, 690 (9th Cir. 1993). To find otherwise, essentially, this Court would have to overrule the District Court. Respectfully, it lacks the authority to do so. *See* 28 U.S.C. § 158.

Even if the Contempt Order somehow does not fall within § 362(b)(4)'s police power exception to the automatic stay, the Contempt Order still does not violate the automatic stay ***because Hayward filed its show cause motion in the District Court on June 7, 2024***, and in a Consent Order of July 3, 2024, this Court modified the automatic stay "to permit the continuation of all docketed proceedings in the District Court Action…" July 3, 2024, Consent Order Relating To Hayward Industries, Inc.'s Motion For Relief From The Automatic Stay (Doc. No. 73).

5

Because the Motion to Show Cause was docketed in the District Court on June 7, 2024, this Court modified the automatic stay to allow the Contempt Order to be entered even if it somehow it does not qualify as an exercise of the District Court's police power.

Certainly, Judge Cogburn must have considered the impact of his order on Blueworks but didn't carve out any exceptions for Blueworks. Had His Honor carved out an exception for Blueworks, the Ningbo Parties, including in particular Mr. Chen (who controls both the manufacturer of the products sold by Blueworks—i.e., Ningbo C.F.—and Blueworks itself) would simply use Blueworks to evade the import and sales ban. Allowing Mr. Chen to hide behind the bankruptcy stay would defeat the purpose of the import and sales ban, which is a sanction for the Ningbo Parties' contempt of court and which is designed to encourage the Ningbo Parties to satisfy the judgment that they owe to Hayward.

In sum, the Court should deny the Debtor's Motion. The Contempt Order was validly entered against Richard Chen and Ningbo CF. (and impacts Blueworks pursuant to the District Court's police power), it is not barred by the automatic stay, and it clearly prohibits the Debtor from selling any product in the United States.

## ARGUMENT

### A. THE PLAIN WORDING OF THE CONTEMPT ORDER BARS THE DEBTOR FROM SELLING PRODUCT.

By its plain language, the Contempt Order bars the Debtor from selling product. The Order states as follows:

1. [. . .] [T]he Ningbo Parties— including all agents, employees, officers, directors, shareholders, affiliates, subsidiaries, assignees, and anyone acting for or through them—shall be barred from importing or selling any product in the United States, including, but not limited to, salt cells, salt water chlorination systems, pumps, heaters, any other equipment for swimming pools, and any components thereof, including the products shown in Appendix A—including, but not limited to, any and all Energy Star certified pumps and any and all pumps bearing Intertek Certification Control No. 4007830. The Ningbo Parties shall not use any shell

> > companies, agents, subsidiaries, affiliates, successors in interest, assignees, corporate restructuring, rebranding, or third parties to evade this import and sales ban.
>
> 2. For the avoidance of any doubt, unless and until the Ningbo Parties pay the judgment, all Ningbo Parties shall be barred from inducing, facilitating, contributing to, or otherwise causing, another natural or juristic person(s) (entity) from importing or selling any of the aforementioned products in or into the United States. As a non-limiting example, the Ningbo Parties shall not use any means to evade the import ban, including, for example, by selling products to a middleman, distributor, import/export agent, or any other person(s) or entit(ies) outside of the United States who will then import or sell those products in or into the United States….
>
> 4. To the extent that this sales and import ban impacts Blueworks Corporation, which is currently in Chapter 11 bankruptcy, the ban does not violate the automatic stay of 11 U.S.C. § 362(a) because the ban is issued pursuant to this Court's policy power to enforce its orders, including the TRO. See 11 U.S.C. § 362(b)(4).

Order, at 16-17. As the Debtor admits, the Contempt Order defines the term "Ningbo Parties" to include (i) Ningbo C.F. Electronic Tech Co., Ltd.,; (ii) Ningbo Yishang Import and Export Co., Ltd.; (iii) Blueworks Innovation Corporation; ***and (iv) Zefeng "Richard" Chen***. Motion, ¶ 9 (emphasis added). Putting the definition of the "Ningbo Parties" together with the plain wording of the Contempt Order reveals that Debtor is barred from importing or selling product in at least the following four independent ways:

- Pursuant to 11 U.S.C. § 101(2)(A), the Debtor is an affiliate of anyone who holds 20% of its voting stock. Chen and the Debtor have admitted that Chen holds 30% of the Debtor's common stock, which is its only class of shares. *See* March 31, 2025, Disclosure Statement of Second Amended Plan of Blueworks Corporation (Doc. No. 280) at 3-4. Thus, Chen holds more than 20% of the Debtor's voting stock, making the Debtor his affiliate. Though the Bankruptcy Court need not rely on Footnote 4 to deny Debtor's Motion, Footnote 4 even further finds that Chen's *alter ego* is the Debtor.

- On top of being Chen's affiliate, the Debtor is at least an agent or third party that Chen and Ningbo CF are attempting to use to evade the import and sales ban.

- The Order bars Chen from inducing, facilitating, contributing to, or otherwise causing the Debtor to import or sell products in the US. as the Debtor's "domestic officer." Chen is the Debtor's "domestic officer." Affidavit of Michael Bowers in Support of First Day Relief (Doc. No. 5), ¶ 4. Thus, any sales or imports by the Debtor can be traced to Chen—as Domestic Officer—inducing, facilitating, contributing to, or otherwise causing them.

7

- The Debtor's *sole* business is to act as a middleman or distributor for Ningbo C.F. products and to sell those products in the United States. Affidavit of Michael Bowers in Support of First Day Relief (Doc. No. 5), ¶ 8.[5]

Even though Hayward told the Debtor that the Contempt Order's plain wording barred the Debtor from selling any products in the United States, *see* Motion, Exh. B at 2-3, the Motion ignores nearly all of the relevant provisions of the Contempt Order. The reason is obvious—the plain wording of the Contempt Order bars the Debtor from selling products in the United States.

B.    **THE DEBTOR'S ARGUMENTS ALL FAIL.**

The Debtor makes a number of unsubstantiated assertions and arguments directed at getting this Court to overrule Judge Cogburn or allow the Debtor to violate the Order. Those arguments must be rejected.

    1.    **The Debtor Pretends that the Contempt Order Says Something Different**

Without citing to any specific wording in the actual Contempt Order in support of its position, the Debtor offers a number of erroneous interpretations of the Contempt Order. This Court should reject them all. First, the Debtor simply announces its "understanding" that it may sell its existing inventory as long as it does not pay Ningbo C.F. Motion, ¶¶ 18-20. The Debtor calls this position its "understanding" because it cannot argue that the Contempt Order actually states this position. Instead, as shown above, there is no basis at all for this "understanding" because the Contempt Order's plain wording specifically bars those acting for Richard Chen (*e.g.*, the Debtor) from selling any product in the United States.

---

[5] Hayward expects that the Debtor will attempt to minimize Chen's role and relationship with it. The Court should reject this effort. At trial, Chen admitted that he was the Debtor's CEO and managed the company. Feb. 24, 2024, Tr. Tran. Vol. 4 143:10-15. Cited portions of the transcript from the District Court trial are attached hereto as Exhibit F. If the Debtor's Second Amended Plan were to be confirmed, Chen would own one hundred percent of the company. (Doc. No. 277).

8

Second, the Debtor claims that the Contempt Order allows it to sell products made by a manufacturer other than Ningbo C.F. Motion at 5, n.3. That claim is also incorrect. Paragraph 1 of the "Order" portion of the Contempt Order (at pp. 16-17) (i) bars Mr. Richard Chen from selling **any** products in the United States (from *candy bars* to *cell phone accessories* to *pool products* and anything else, ***especially the "Blueworks" and "Chlorworks" Amazon ASINs listed in Appendix A, pp. 9-17***), and bars the Debtor from doing the same because it is Chen's "*affiliate*" (and/or, pursuant to Footnote 4, Chen's alter ego) and (ii) bars Chen from using an agent or a third party, like the Debtor, as his proxy to sell products in the United States. Contempt Order at 16. Meanwhile, Paragraph 2 (i) bars Chen from causing an entity, like the Debtor, to sell products in the United States and (ii) bars Chen from using a middleman or distributor to sell products in the United States. *Id*. at 16-17. Critically, the Order bars the sale of "**any** product." *Id*. 16-17. The Contempt Order precludes Richard Chen – and hence the Debtor – from selling anything in the United States; it does not limit the banned product sales to only those products made by Ningbo C.F. Indeed, Richard Chen cannot even circumvent the contempt Order by selling the Company, given the Order ¶ 1 recites its applicability to "assignees" and/or "successors-in-interest."

Third, the Debtor claims that it may sell products in the United States, provided that it had already imported the product from Ningbo C.F. when the Contempt Order was entered. Motion, ¶ 18. Again, the Contempt Order refutes this claim. The Contempt Order bars the Debtor from importing or selling products. Contempt Order at 16-17. There is no exception or grandfather clause to allow the sale of products imported before the Order. Again, it is an import *and* sales ban, not just an import ban. And nothing in the Contempt Order would allow Richard Chen (and hence the Debtor) to sell a product in the United States solely by virtue of said product already having been imported into the country.

9

Fourth, the Debtor suggests that the Contempt Order cannot actually be read to prevent the Debtor from selling its products because the Order "focuses on the Ningbo Parties." Motion, ¶ 20. The "focus" is on the Ningbo Parties, because it is Ningbo C.F. and Richard Chen, for example, that are at the center of things vis a vis the nefarious conduct inviting of the contempt order. It is others, whether it be Blueworks Corporation and/or others, who faces consequences derivative of that. Again, the Debtor has no support from the Order's text. At the Show Cause hearing, at which the Debtor's counsel was present, the District Court clarified its stance on Chen:

> THE COURT: You don't have to convince the Court that Mr. Chen is not operating in an honest and open way.
>
> MR. BELT: Yeah. So what we think, Your Honor –
>
> THE COURT: The Court has seen him testify. We've heard it all. We understand, and we are -- we are -- he's going to have to either follow the orders of this Court or the Court is going to do everything in its power to make him do so or punish him to the extent the Court can.

March 5, 2025, Hr'g Tran. 24:10-17. Contrary to the Debtor's suggestion, a *de facto* ban to the Debtor from selling products in the United States in order to compel its equity owner Chen to follow the District Court's orders is the only way that the Order can be read.

### 2. The Debtor Wrongly Suggests the Order is Jurisdictionally Defective.

The Debtor falsely claims that the Debtor was not "before the District Court" in the contempt proceeding. Motion, ¶ 21. At the outset, it not even clear what the Debtor means by use of this colloquialism. Hayward suggests that the reason that the Debtor settled on the use of this ambiguous phrase is because it cannot argue that the District Court did not have jurisdiction over it, that it was denied due process, or that it did not know in advance that the District Court's Contempt Order may negatively affect it. Instead, the best that it could do was to throw out this

10

colloquialism and hope for the best. That type of argument is an insufficient basis for this Court to attempt to reverse the District Court.

First, the District Court *clearly* had jurisdiction over the Debtor because (i) the Debtor was validly served with the summons and complaint, and (ii) for personal jurisdiction purposes, Debtor resides in Union County, North Carolina. Further, the Court approved Shumaker Loop & Kendrick, LLP to be special counsel to the Debtor in the District Court case on August 8, 2024, Amended Ex Parte Order Approving Application to Employ Shumaker, Loop & Kendrick, LLP as Special Litigation Counsel for Debtor and Debtor-in-Possession as of the Petition Date (Doc. No. 116). Further still, the Debtor's bankruptcy counsel appeared in the District Court action on June 14, 2024[6], and he has argued on behalf of the Debtor in at least three arguments to the District Court since then. *Hayward Industries, Inc. v. Blueworks Corporation, et al.,* Western District of North Carolina, Case No. 3:20-cv-00710-MOC, June 17, 2024, Minute Entry, October 23, 2024, Minute Entry, January 14, 2025 Minute Entry. There is no argument that the District Court lacked jurisdiction over the Debtor.

In addition, because Debtor's counsel had appeared for it in the District Court case, Hayward properly served Hayward's papers related to the contempt proceedings by use of the Court's EFC system.[7] FED. R. CIV. P. 5(b)(2)(E). Further, the District Court's order granting the Hayward's Motion to Show Cause and Hayward's Motion to Expedite, entered on January 27, 2025 (Doc. No. 568), and the Court's Notice of Hearing for the Show Cause/Contempt hearing,

---

[6] A true and accurate copy of counsel's Notice of Appearance is attached hereto as Exhibit A.

[7] Hayward's show cause/contempt papers filed in the District Court include, inter alia, Motion for Order to Show Cause, June 7, 2024, District Court (Doc. No. 468), Motion for Leave to file Supplement to Motion to Show Cause, October 19, 2024, District Court (Doc. No. 535), Motion for Leave to file Second Supplement to Motion to Show Cause, December 3, 2024 (Doc. No. 550), and Motion to Expedite Scheduling of Show Cause/Contempt Hearing, January 9, 2005, District Court (Doc. No. 558) on the Debtor

11

entered on January 28, 2024, were also served upon the Debtor pursuant to FED. R. CIV. P. 5(b)(2)(e). Having been properly served with all of the motions filed in the District Court case and with a copy of the Order granting Hayward's Motion to Show Cause and the Notice of Hearing for that Show Cause hearing, all in a case in which it was a party and in which the Court had jurisdiction over it, the Debtor has no good faith argument that it was "not before the Court."

Second, Hayward respectfully submits that the Contempt Order, focusing on Ningbo C.F. and Richard Chen, does not require jurisdiction. *See, e.g., Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 691 (D. Md. 2007) ("[C]ourts have held that a third party may be subject to personal jurisdiction for contempt for knowingly aiding and abetting the violation of a court order, even without other contacts with the forum state").

### 3. The Debtor Had Due Process and Fair Notice that the Order Might Impact Its Operations.

Contrary to the Debtor's suggestions, Motion, ¶¶ 24-25, the Debtor knew that its operations could be impacted by the Contempt Order, had an opportunity to be heard on the Contempt Order, but strategically decided to keep quiet in the District Court. Indeed, though Debtor never mentions it in its Motion**, the Debtor's counsel Matthew Tomsic actually attended the show cause hearing, and the Debtor's special corporate counsel Michelle Dunn represented Ningbo CF.**

At the hearing, Mr. Tomsic did not tell Judge Cogburn that he wanted to be heard on any issue, did not ask him to give him more time to prepare for the hearing, and did not ask him to allow post-hearing briefing. Instead, the Debtor, thorough its counsel, sat silent in the gallery while the District Court Judge said that the Debtor would "have a hard time in this court, if they don't come in here and defend." March 3, 2025, Hr'g Tran. 5:5-7. After the hearing concluded, the Debtor claims to have notified Hayward's counsel that it disputed the District Court's finding that the Order was entered pursuant to its police powers. Motion at 6, n.4. But it never notified the

12

District Court of its contentions nor did it provide any comments to the District Court even though, as a party to District Court case, it could have.

Instead, the Debtor blames Hayward for the Debtor's own failure to comment on the proposed Contempt Order. This attempt to shift blame falls flat. As Hayward's counsel informed Debtor's counsel, "Blueworks was not the subject of the Contempt Order." Motion, ¶ 25. That the Debtor was not the subject of the Contempt Order, however, does not mean that the order would not effect it. The Contempt Order necessarily affects parties other than Ningbo C.F. and Richard Chen, *e.g.*, their customers, though they have Mr. Chen's contemptuous conduct to blame for that. The Debtor knew that the Contempt Order would effect it from Judge Cogburn's oral comments at the hearing and from the draft order itself.

In short, the Debtor had due process and could have defended itself in the District Court if it had any arguments to make, but, instead, it strategically chose the path of silence before Judge Cogburn to forum shop its luck before this Court only after the Order's entry. The Court should not reward the Debtor's sandbagging.

### 4.     Hayward did not violate the automatic stay.

Finally, the Debtor claims that Hayward somehow violated the automatic stay, 11 U.S.C. § 362(a), in connection with the Contempt Order. As explained above, this is wrong because the District Court expressly addressed the Contempt Order's potential impact on the Debtor and explained that any impact would not violate the automatic stay, 11 U.S.C. § 362(a), because the Court issued the ban pursuant to its police power to enforce its orders pursuant to 11 U.S.C. § 362(b)(4). Order, 1 n.1, 17. Section 362(a) sets forth a number of acts that that are stayed by the filing of a Petition; § 362(b), in turn, sets for additional acts that are exceptions to § 362(a)'s automatic stay and that are not stayed by the filing of a Petition. Pertinent here, § 362(b)(4), allows

13

a governmental unit to continue any action to enforce such governmental unit's police power. The District Court is a governmental unit, and it entered the Order pursuant to its police power to enforce its previously entered orders. *In re Kupperstein*, 994 F.3d at 679-81; *In re Leonard*, 644 Fed.Appx. at 615-16; *Coulton*, 594 Fed.Appx. at 566; *Sabre Group, Inc.*, 1999 WL 683863 *2 (5th Cir. 1999); *Alpern*, 11 F.3d at 690.

Further, the Debtor appears to suggest that, even if the Contempt Order is a valid exercise of the District Court's police power, Hayward still violated the automatic stay by asking the District Court to enter the Contempt Order. Motion, ¶ 26. Courts have also roundly rejected that argument. *See Coulton*, 594 Fed.Appx. at 566 ("judiciary, acting through [movant] as a surrogate, in effect 'brought' the contempt proceeding"); *Alpern*, 11 F.3d at 690 ("movant for sanctions [is] both a private actor and a governmental surrogate enforcing the judiciary's regulatory power through the mechanism of a sanction").

Finally, as explained above, even if the Contempt Order somehow does not fall within § 362(b)(4)'s police power exception to the automatic stay, the Contempt Order still does not violate the automatic stay because this Court modified the automatic stay "to permit the continuation of all docketed proceedings in the District Court Action…" (Doc. No. 73). The only exception to the Consent Order potentially pertinent here is that Hayward cannot seek to collect from the Debtor on its Judgment or enforce the Judgment against the Debtor. *Id*. at 2. That exception, however, is not applicable here because Hayward's challenged conduct of informing Amazon of the Contempt Order, which resulted in Amazon making an independent decision to remove the Debtor's products, does not constitute collecting or enforcing the Judgment against the Debtor.

**CONCLUSION**

The Court should deny the Debtor's Motion. The Order clearly bars the Debtor from selling product in the United States, the District Court had jurisdiction to enter the Order, the Debtor had due process, and the automatic stay does not bar the Order.

|  |  |
|---|---|
| Dated: April 7, 2025<br>Charlotte, North Carolina | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ B. Chad Ewing*<br>B. Chad Ewing (N.C. State Bar No. 27811)<br>301 S. College Street, Sute 3500<br>Charlotte, NC 28202<br>Telephone: (704) 331-4900<br>Facsimile: (704) 331-4955<br>Email: chad.ewing@wbd-us.com<br><br>-and-<br><br>**MCCARTER & ENGLISH, LLP**<br>Erik Paul Belt<br>James Donoian<br>Anne E. Shannon<br>Alexander L. Ried<br>Siobhán M. Tolan<br>265 Franklin Street<br>Boston, MA 02110<br>Telephone: (617) 449-6500<br>Facsimile : (617) 607 9200<br>Email: ebelt@mccarter.com<br>jdonoian@mccarter.com<br>ashannon@mccarter.com<br>aried@mccarter.com<br>stolan@mccarter.com<br><br>*Counsel for Hayward Industries, Inc* |